# ISABEL GONZALEZ ET AL., Plffs.,

## *v.*

# PEDRO ARZUAGA ET AL., Dfts.

San Juan, Equity, No. 822.

### AVOIDING A FRAUDULENT SALE.

Equity—Tender.

1–3. While tender before suit is a necessary element in legal rescission, it is not a prerequisite to the commencement of a suit in equity for rescission or cancelation; but if it is found that a plaintiff seeking rescission or cancelation has received money on account of the transaction which he is seeking to rescind or cancel, he will be required to tender or offer to repay it, in a proper case, before a court of equity will aid him.

Fraud—Inadequacy of Consideration—Notice.

4. Inadequacy of consideration alone is not a ground for interference of a court of equity when a party seeks to rescind or cancel on the ground of fraud, and if the circumstances surrounding the transaction are such as to put a party on inquiry, the law imputes notice to him.

Power of Attorney.

5. The law requires that a power of attorney to sell must be executed with the same solemnities as a deed of sale, and when one purchases under a power not executed in accordance with the requirements of law he purchases at his peril.

Power of Attorney—Ratification—Third Parties.

6. While there is no doubt that an unauthorized sale by an attorney in fact may be ratified, proceedings by the principal against the agent cannot affect third parties.

Opinion filed July 22, 1915.

NOTE.—For notes on different phases of the necessity of returning benefits as condition of rescission of contract, see 30 L.R.A. 44; 1 L.R.A.(N.S.) 379; 25 L.R.A.(N.S.) 1302; 35 L.R.A.(N.S.) 660.

## Statement of Facts.

The plaintiff Isabel Gonzalez at one time owned a certain rural estate in the district of Loiza. On August 14, 1905, she with her husband duly executed before a notary a lease of this property to the firm of Sobrinos de Ezquiaga for six years, subject to renewal, for $400 a year. Her husband was unsuccessful in business and went to Cuba, and, on account of his absence, she, being almost blind, gave a power of attorney to one Rudolfo Gonzalez "to sell the real or personal property or live stock owned or that may hereafter be owned by the maker of this document, for which her attorney shall endeavor to get the best price, and for the sale of a rural estate or property which she owns in the District of Loiza, known as lot 16, before effecting which sale he shall receive her written consent." In January 1906, Gonzalez mortgaged the Loiza property to José Ignacio and Francisco Arzuaga Izaguirre. The mortgage was to run for several years, but on January 12, 1907, long before its maturity, Gonzalez sold the property for $1,500 more to the mortgagees, acting under the same power of attorney. The registrar declined to admit the deed until the written consent of plaintiff was secured. A paper purporting to be signed by her was accordingly secured January 2, 1907, in the words,—

"Dear godfather:—I am agreeable to the sale which you proposed to me of the rural property in Loiza, known as lot 16, by virtue of which I authorize you to sell. I remain your affectionate godchild, Isabel Gonzalez de la Mata."

This was duly protocolized by the notary Torres, as appears by a notarial act of May 9, 1907. The notary in his testimony

has said that he knew the writing of the lady, and he had no reason to doubt the signature. The plaintiff alleges that the only paper signed by her was one described to her in her blindness, as to increasing the rent. On discovering that it was something else, she immediately, in June, 1907, revoked the power of attorney, and instituted various proceedings against Gonzalez. No serious contest is made over the fact that Esquiaga paid the $1,500 to Gonzalez, or that Gonzalez never paid it over to plaintiff. The bill in this case was filed in March, 1911, and seeks to set aside the transaction as a fraud upon the plaintiff. The trial was had and the matter was submitted on the merits March 17, 1915.

Defendant Arzuaga was the active man in the sale transaction, and was shown to have represented also the Esquiagas, with whom he was connected.

*Mr. Jos. Anderson, Jr.,* solicitor for plaintiff.

*Mr. F. H. Dexter* solicitor for defendants.

HAMILTON, Judge, delivered the following opinion:

1. It is urged on behalf of the defendant that it is necessary for the plaintiff, in order to come into equity, to offer to do equity by tendering the amount of purchase money paid by defendants. This, however, does not seem to be necessary in the case at bar. The sale in question was not for $5,500 cash, but for $1,500 in addition to cancelation of an existing mortgage of $4,000 to the same parties. It might very well be

Gonzalez v. Arzuaga.

that the most which could be asked would be proper allegations as to the $1,500 as in that event the deed could be set aside and the parties reinstated in their position before the sale. The bill does not seek any relief against the mortgage. It is not claimed to be fraudulent. Only the sale of the equity of redemption for $1,500 is attacked, and the object of the bill, at least, the apparent object of the bill, is to restore the parties to the position that they held as mortgagor and mortgagee. "Tender before suit is . . . a necessary element in legal rescission, but is wholly superfluous as a prerequisite to the commencement of a suit in equity for rescission or cancelation; and insistence upon it as such prerequisite often works a complete denial of justice." 6 Pom. Eq. Jur. § 688; Neblett v. Macfarland, 92 U. S. 101, 23 L. ed. 471.

2. Moreover, in the case at bar, if the deed is set aside the defendants will be liable for rents, and it seems to be the fact that the rents will at least substantially equal the interest on the $4,000 loan. In fact, if the plaintiff is right, the value of the use and occupation considerably exceeds the interest on the loan. In other words, on the allegations of the bill this is a case of accounting, and on the accounting there would seem to be no balance over for necessary tender.

3. This leaves out of account entirely the $1,500 paid by the defendants. If that has come to the hands of the plaintiff, she should tender it, or offer to repay it, before a court of equity would aid her. She could not keep the money and have the land both. But the facts show to the satisfaction of the court that she never received the $1,500. Conceding that it was paid to Gonzalez, it certainly never reached the plaintiff, and, so far as concerns the matter of tender, there

Gonzalez v. Arzuaga.

would be no necessity and there would be no justice in requiring her to tender back what she never received.

4. Fraud is very seldom a self-evident fact, and can generally only be established by a series of facts, which oftentimes by themselves would not mean anything. In the case at bar the plaintiff was partially blind, which was known to the defendants or their representatives. The tendency of the evidence is to show that the price of $5,500, even if paid, was inadequate. It is true that parties can contract for purchase at an inadequate price. The inadequacy must either be accompanied by other inequitable incident, or be so gross as to shock the conscience. 2 Pom. Eq. Jur. §§ 926–928. Inadequacy alone, therefore, is not a ground for interference of a court of equity, the more especially if the grantor is in needy circumstances and wishes to realize. On the other hand, a common occasion for fraud is that of taking advantage of another's needs. The defendants were relying upon the plaintiff's power of attorney, which was given years before and on account of the absence of her husband, who in the meantime returned. The husband's signature does not appear upon the deed. The representative of Arzuaga, the defendants' attorney in fact, must have had actual knowledge of the defect in the deed, because he seems to have been present when the notary required that the defect be removed.

These facts would seem to be insufficient to put the purchasers upon inquiry, which would have developed the lack of power of Gonzalez to bind the plaintiff under the circumstances. It would not be necessary to decide that the defendants themselves participated in the fraud, if they were aware of circumstances which would put them on notice, when followed up,

of the existence of fraud. They could take nothing under this state of facts. Michoud v. Girod, 4 How. 503, 11 L. ed. 1076; Sonnentheil v. Christian Moerlein Brewing Co. 172 U. S. 401, 410, 43 L. ed. 492, 496, 19 Sup. Ct. Rep. 233; 2 Pom. Eq. Jur. §§ 874, 928. The law imputes notice when the parties are put upon inquiry.

5. There is another view of the case which would seem to be conclusive. The plaintiff gave a power of attorney to mortgage, but it was not a power of attorney to sell, unless the plaintiff gave an additional authorization in writing. The only authorization shown is one by letter, which plaintiff denies executing. She was partly blind, and the evidence does not satisfactorily show that she knew the contents of the paper. The law, moreover, is that a power of attorney to sell must be executed with the same solemnities as a deed of sale, and under the same principle the authorization for sale, specially required by a power of attorney for another purpose, must be of the same solemnity as the power of attorney. Sec. 1247 of P. R. Civ. Code — (1) "Acts and contracts the object of which is the creation, modification or extinction of property rights on real property" must appear in a public instrument. What was signed by the plaintiff was not a power of attorney to sell, but at most a contract to execute such a deed or such a power. The purchaser bought under such a paper at his peril. It not only was insufficient in itself to pass title, but it was subject to repudiation under circumstances such as at bar.

P. R. Civil Code: Section 1226. "No one can contract in the name of another without being authorized by him or without having his legal representation according to law."

"Section 1616. An agent cannot exceed the scope of his authority." 11 Manresa, 468.

An obligation entered into by an attorney in fact in manifest excess of powers conferred upon him is void and of no value. Section 1228 of the Civil Code provides:

"There is no contract unless the following requisites exist:

"1. The consent of the contracting parties.

"2. A definite object which may be the subject of the contract.

"3. The cause for the obligation which may be established."

Section 1232 says that "consent given by error under violence, by intimidation or deceit shall be void."

Section 1236 is as follows: "There is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made."

6. There is no doubt that an unauthorized act of an attorney in fact can be ratified, and it is urged that the plaintiff did this. She sued her attorney in fact for the money, brought criminal proceedings against him for embezzlement, and, when he went into voluntary bankruptcy, filed a claim. The fact that these steps were taken by an attorney and not by herself is not material. The only way she could act in such proceedings would be by an attorney, and the fact that she did not tell the attorney to take particular steps would not be material if she gave him authority to take whatever steps appeared necessary.

The question, however, goes deeper than this. The acts set up of ratification were acts between a principal and agent,—in this case between a poor blind woman and an unscrupulous representative, who had obtained money in her name, and did not account for it. Whatever happened between these two could

Gonzalez v. Arzuaga.

not affect a third party. Ratification of sale has to be some act between the plaintiff and the purchaser of the property, whereby she recognizes him as owner. Nothing of the sort is set up, and nothing of the sort is shown in the evidence. *Non constat* that she was trying to get the money back in order to return it to the alleged purchaser and set aside what she considered a void sale. Ratification consists of a dealing between the parties inconsistent with the intention to rescind, such as receipt of purchase price, or otherwise taking the benefit of the contract. This does not appear in the case at bar. 6 Pom. Eq. Jur. § 687; Shappirio v. Goldberg, 192 U. S. 232, 48 L. ed. 419, 24 Sup. Ct. Rep. 259.

It cannot be said, therefore, that there is any ratification in the case. A person who has been misled must use reasonable diligence to disaffirm the contract, but what might be diligence as between two business men is not necessarily the standard when an ignorant blind woman is concerned. It cannot be said that there is a lack of diligence on the part of the plaintiff, under all the circumstances of the case. 2 Pom. Eq. Jur. § 897.

It follows, therefore, that the plaintiff is entitled to relief, and a decree will be entered setting aside the deed of sale and restoring the parties to their position before that date, and a reference will be ordered to the standing master to determine the state of the account between them.

It is so ordered.