## NEBLETT v. MACFARLAND.

Where a conveyance of a plantation had been obtained by fraud, and the only consideration alleged by the grantee was the cancellation of a certain bond executed by the grantor, and the court below set aside the deed, and ordered that the bond, unaffected by any indorsement of credit or payment thereon, should be returned, and that it and the mortgage therewith given should have the same force and effect as if the conveyance had not been made and the bond had not been cancelled, — *Held*, that the decree was proper in not making the payment of the bond a condition precedent to the reconveyance of the plantation.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

. This is a suit in equity to set aside a deed of conveyance of a plantation known as " Mossland," in the State of Louisiana, executed by the appellee on the 19th of September, 1868, when temporarily residing in England.   Macfarland, the complainant, who is the appellee in this court, alleged that the conveyance had been procured by the false and fraudulent representations of the appellant and his father, Sterling Neblett.

The appellant, in his answer, alleged that the consideration for such conveyance was the surrender and cancellation of a bond for $14,464.51 executed by the appellee to Sterling Neblett, and by the latter indorsed to the appellant.   The court below decreed that the deed of the complainant, conveying to the defendant the plantation in the bill of complaint described and designated as " Mossland," be, and the same is, declared null and void and of no effect, and that the title to the said plantation is declared. to be vested in the said complainant to the same extent as if said deed had never been executed.

That within thirty days the defendant make, execute, and deliver to the complainant a deed reconveying said plantation to him in fee-simple; and, in default thereof, that the decree

shall have the same operation and effect as the execution and delivery of said deed.

But neither the execution and delivery of such deed nor this decree shall in any wise affect the lien of said defendant on said plantation, created by the deed of trust thereon to secure the said bond for $14,464.51.

That the original of said bond, now on file in this cause, be delivered up to the defendant, unaffected by any indorsement of credit or payment thereon; but this decree shall be without prejudice to any right which the defendant has under the bond and mortgage which he derived by the assignment of Sterling Neblett, but they shall have the same force and effect as if the deed had not been made, or any cancellation of the bond taken place.

From this decree Neblett appealed to this court, on the ground that the payment of Macfarland's bond was not made a condition precedent to the reconveyance of the property to him.

*Mr. W. Alex Gordon* for the appellant.

*Mr. John A. Campbell, Mr. E. M. Hudson,* and *Mr. Walker Fearn,* for the appellee.

MR. JUSTICE HUNT delivered the opinion of the court.

The allegation of error in this case is confined to a single point. In his brief the counsel for the appellant says, " The court erred in not making the payment of our bond a condition precedent to the reconveyance of the plantation, as set forth in our motion for a new trial; and on this ground, and from this point of the decree, do we appeal and ask for relief."

The action was brought to set aside the conveyance of a plantation in Louisiana, made by Macfarland to the appellant Neblett, upon the allegation that the conveyance was obtained by the fraudulent acts and representations of Neblett and his father.

The only consideration given, or professed to be given, by Neblett for the conveyance, was the cancellation of a certain bond for the sum of $14,464.51, executed by Macfarland to Sterling Neblett, the father, and alleged to be the property of Henry Neblett.

The court below adjudged the transaction to be fraudulent,

directed the execution of a deed reconveying the property, and ordered the return and redelivery of the bond for $14,464.51, unaffected by any indorsement of credit or payment thereon, and the same, with the mortgage made for its security, to retain the same lien thereon and the same force and effect as if the deed had not been made, or any cancellation of the bond taken place.

The complaint now made is, that, instead of directing a return of the bond in specie as a condition for the return of the land, the court should have directed the payment of the amount of money secured thereby.

In cases of this character the general principle is, that he who seeks equity must do equity; that the party against whom relief is sought shall be remitted to the position he occupied before the transaction complained of. The court proceeds on the principle, that, as the transaction ought never to have taken place, the parties are to be placed as far as possible in the situation in which they would have stood if there had never been any such transaction. *Bellamy* v. *Sabine*, 2 Phil. 425; *Samy* v. *King*, 5 H. L. 627; *W. B. of Scotland* v. *Addie*, L. R. 1 Scotch App. Cas. 162; *Gatley* v. *Newell*, 9 Ind. 572; *Johnson* v. *Jones*, 13 Sm. & M. 580; Kerr on Fraud, 335, 343. This is, no doubt, the general rule.

We do not, however, perceive that the principle will benefit the complaining party in this suit.

1. He is restored here to his property that he had and parted with when he received his deed; to wit, his bond and mortgage. If he had paid $14,500 in money, and received in return only a bond for the like amount, of doubtful security and impaired by the lapse of time, he might well have complained. But he paid no money. He surrendered a bond against an insolvent debtor who had left the country, and a mortgage upon an estate abandoned by the owner, and in relation to which the Nebletts, father and son, make the most bitter complaints of its insufficient security.

In his letter of Sept. 29, 1869, Henry Neblett says, "Your deed lay in the hands of your uncle as an escrow. . . . I have hesitated whether to abandon the place, or struggle to save something by borrowing a large sum, and risk of forced culture

in latitude 30¼." Sterling Neblett, the father, writes, " If Men-
doza be correct, as he just advised, that there are numerous debts
and some judgments against Mossland" (the plantation in
question), " liens on the property that Henry nor I did not know
of, the trust-deed on record at St. Martin's give the only pro-
tection against them. . . . Henry is absent, and has long been
the true owner of James Edward's bond. I thought of you if
interested and my deed to Henry could arrange matters. But
alas ! so far unsuccessful, — debts to others, less and less proba-
bility of buying the Bruossade bonds. . . . How much money
will you provide Henry if he decides to go ? "

The letter of the same person of February, 1869, is filed with
the accounts of the embarrassments and difficulties, of the
depreciation of the estate, the claims for taxes, judgments, and
general creditors. Among other things, he says, " I know
Henry would let you have his debt " (the bond in question) " for
fifty cents on the dollar."

We are not able to say, nor is it very material to know,
whether these statements were false and fraudulent, or whether
the security was really so inadequate as is here represented.
Whether good or bad, he receives now the same security that
he then gave to his vendor. It would be a perversion of jus-
tice to give him the full amount in money for a security then
worth but fifty cents on the dollar. If, on the other hand, it
was then an adequate security, it is the same now.

2. It is no objection to a restoration of property received on
a fraudulent sale that it has fallen in value since the date of
the transaction. *Blake* v. *Morrell*, 21 Beav. 613; *Veazie* v.
*Williams*, 8 How. 134, 158. Nor, if the property is of a perish-
able nature, is the holder bound to keep it in a state of preser-
vation until the bill is filed. *Scott* v. *Perrin*, 4 Bibb, 360;
Kerr, 337.

A party seeking to set aside a sale of shares is not bound to
pay calls on them to prevent forfeiture after filing his bill;
nor is it fatal to his right of rescission that some of the shares
have been thus perfected.

We have no means of knowing whether there can be a
defence made to the bond arising from the Statute of Limita-
tions. When the bond has been so recently adjudged by the

court to be a subsisting security, and to be a lien upon the plantation directed to be reconveyed, — the party in substance redelivering the bond as a condition of obtaining such reconveyance, — it would seem that a defence of this character could not be a good one. But of this the appellant must take his chance. If the bond has become thus impaired, it is no worse than the loss of a perishable article, or the forfeiture of shares during the litigation. These circumstances do not alter the rule of law. In *Gatley* v. *Newell, supra,* it is said, " The party defendant is not bound to rescind until the lapse of a reasonable time after discovering the fraud. Hence the parties cannot be placed *in statu quo* as to time."

Parties engaged in a fraudulent attempt to obtain a neighbor's property are not the objects of the special solicitude of the courts. If they are caught in their own toils, and are themselves the sufferers, it is a legitimate consequence of their violation of the rules of law and morality. Those who violate these laws must suffer the penalty.       *Decree affirmed.*