## CONE v. HARRIS et al.

No. 12288—Opinion Filed Nov. 12, 1924.

**Judgment—Fraudulent Procurement—Equitable Relief.**

The court of equity will relieve against the enforcement of a purported judgment, where no such judgment was, in fact, rendered; or, against the enforcement of a judgment obtained secretly under such circumstances as to amount to a fraud upon the court, or upon the rights of the party against whom the judgment was obtained.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Seminole County; E. F. Lester, Judge.

Action by H. L. Cone against G. G. Harris, J. A. Baker, and J. R. Thorne. Judgment for defendants, and plaintiff appeals. Reversed, with directions.

Crump & Hall, for plaintiff in error.

John W. Wilmott and R. J. Roberts, for defendants in error.

Opinion by SHACKELFORD, C. The plaintiff in error was plaintiff in the trial court, and the defendants in error were the defendants. The parties will be referred to herein as plaintiff and defendants as they appeared in the court below.

The petition of plaintiff was filed in the district court of Seminole county, Okla., on the 25th day of January, 1918. By his petition he sought to set aside and vacate a purported judgment of the district court of Seminole county, a journal entry of which judgment was signed by the Honorable Tom D. McKeown, judge of the district court; and the property involved in the judgment is the northeast quarter of the southwest quarter (NE¼ of SW¼) of section 11, township 7 north, range 5 east, in Seminole county. The plaintiff alleges in his petition that he was the owner of the property on January 12, 1914, and is still the owner thereof. That on the date above mentioned there was pending in the district court of Seminole county a suit styled "H. L. Cone versus G. G. Harris et al." brought for the purpose of quieting the title to the land above described and other lands; that the plaintiff was represented by George C. Crump and the defendant Harris by J. A. Baker, and the case was numbered in the district court of Seminole county as 2192; that a copy of the purported journal entry is attached and made a part of the petition; that the journal entry was improperly, clandestinely and fraudulently obtained by the defendant Harris, and his attorney, J. A. Baker, in this wise: That on the date named the cause was pending and there was involved 120 acres of land, including the 40 acres above described, and a conference among the parties and their attorneys was had in which it was agreed and understood that judgment should be entered for the plaintiff (H. L. Cone) for 80 acres of the land; and that the case should be passed and continued as to the other 40 acres, the property involved here, until the law controlling as to that 40 acres (an Indian homestead allotment) should be better determined. That pursuant to the agreement judgment was entered as to the 80 acres (surplus allotment) and the cause continued as to the 40 acres,

and no judgment was rendered. That on the 1st of December, 1914, the cause was still pending and undetermined, and on said date a notation was made by the judge upon his trial docket that the cause was not to be taken up for trial except upon request of counsel. That at some time not known to plaintiff, the attorney for G. G. Harris, the said J. A. Baker, fraudulently and without any notice presented a journal entry to the trial judge and induced him to sign it, quieting the title to the 80 acres in the plaintiff, but giving the defendant Harris the said 40 acres, and that the journal entry, in so far as it adjudged the ownership of the said 40 acres to be in the defendant was a fraud upon the court and upon the plaintiff, because no judgment had, in fact, been rendered affecting the said 40 acres; and thus far the purported journal entry was void and of no effect, and should be set aside and vacated. That on the 20th of November, 1916, the said J. A. Baker made a deed purporting to convey the said 40 acres to the defendant J. R. Thorne, but that he took the conveyance without giving consideration therefor, and with full knowledge of the plaintiff's rights, and the conveyance constitutes a cloud upon plaintiff's title. That the plaintiff did not know of the existence of the journal entry until long after it was signed, and just shortly before this action was filed, and that he is precluded from prosecuting appeal, and has no legal remedy. Plaintiff prays judgment for cancellation of the deed made to Thorne, and that the purported journal entry of judgment be canceled, set aside, and held for naught, and that case No. 2192 be reopened and placed upon the trial docket of the district court of Seminole county for final judgment as to said 40 acres.

The defendants demurred to the petition. The demurrer was overruled and the defendants answered by general denial.

This cause was called for trial on the 12th of October, 1920, and tried to the court. At the close of the cause the court made findings of fact. The court found that on the 12th of January, 1914, judgment was rendered in favor of H. L. Cone as to the 80 acres (surplus allotment) and indicated that Harris was entitled to the 40 acres (homestead), but would withhold judgment until some future time. That the trial judge signed the journal entry of judgment covering all the land, and instructed the attorney for Harris to withhold the filing thereof to a future time. That afterwards J. A. Baker gave notice to A. M. Fowler, as attorney for plaintiff, that the cause would be called up on September 12, 1916, and Baker

and Fowler were present at said time, and Baker obtained an order that the decree should be recorded. The court found there was no fraud. That the journal entry of judgment, with the order made to record it, constitutes a judgment as of January, 1914, and relates back to that date. Judgment was entered for defendants denying the relief prayed for by plaintiff.

The plaintiff prosecutes appeal and presents his assignments of error under one proposition, as follows:

"That the testimony of both the plaintiff and defendant produced conclusive proof that the judgment attacked was obtained by a gross and palpable fraud committed upon the court and against the rights of this plaintiff in error, and that such purported judgment should have been set aside by the court below."

The evidence upon the part of the plaintiff tends to show that case 2192, Cone v. Harris et al., was pending in the district court of Seminole county on about January 12, 1914, and the title to 120 acres of land, including the northeast quarter of the southwest quarter of 11-7-5 was involved. That a conference was had by the attorneys for the respective parties in which it was agreed that judgment should be entered for plaintiff (Cone) for the 80 acres (Indian surplus allotment) and that the case should be continued as to the 40 acres above described (Indian homestead allotment). That on about December 1, 1914, the cause was called to the attention of the court by counsel for plaintiff, in the presence of counsel for defendants, and a notation made upon the judge's trial docket that "this cause not to be placed upon the trial docket until requested by counsel." That a short time before the present suit was filed, or sometime in the latter part of 1917, there appeared of record in the court clerk's journal a journal entry evidencing the rendition of a judgment on the 12th of January, 1914, in which it appeared that the defendant G. G. Harris had been adjudged to be the owner of the 40 acres, (homestead allotment). That there had been no adjudication as to the said 40 acres. The trial judge who presided in the district court of Seminole county, and who, it seems, signed the journal entry so recorded, in effect testified that while he was, at that time, of the opinion that the defendant (Harris) should recover the homestead 40 acres, he had never rendered any such judgment.

The evidence on the part of the defendant G. G. Harris tended to prove that sometime in March, 1914, the attorney for Harris had presented to the trial judge the journal entry of which the plaintiff complains, and the judge signed it and told the attorney to withhold it from the journal until some future time; and that sometime in March, 1914, it was stamped with the rubber filing stamp of the court clerk of Seminole county, but was withheld by the attorney for Harris, and was not journalized until sometime in 1916 after the notation was made in the trial docket or dictated to the clerk as follows: "Decree ordered recorded." It is not certain from the record just when this order was made, but apparently sometime in the latter part of 1916. That on December 1, 1914, when the notation was made by the trial judge that the cause was not to be placed on the trial docket except upon request of counsel, the attorney for Harris then had the journal entry in his possession, and withheld it from the court journal, and said nothing of its existence to the court, to the plaintiff, or counsel for him.

It seems evident from this record that neither plaintiff, Cone, nor his attorney knew of the existence of the purported judgment until the journal entry was journalized in late 1916, and the defendant Harris and his attorney were seeking to enforce the judgment. Nearly three years had elapsed since the journal entry was signed by the trial judge before it was turned over to the court clerk to be recorded in the journal. Thus we see that the right to prosecute appeal from the judgment, if, in fact, a judgment had been rendered as appeared to be evidenced by the journal entry, had been destroyed by the act of the parties, and abrogated and denied under the law. It seems that parties litigant have no right more certain than that they have a right to be advised of the rendition of judgments at the time of such rendition so they may exercise the right accorded them under the code to prosecute appeal if they wish to do so. Where that right has been abrogated and denied by the wrongful action of the opposing party, and the party aggrieved is without fault or laches, will a court of equity relieve against the judgment by vacating and setting it aside? This is a proceeding in equity to vacate a judgment denying property rights, where the judgment was rendered clandestinely, if rendered at all, or against a purported judgment which was never, in fact, rendered. The learned chancellor who decided this case found that the journal entry had been signed by the trial judge, who had ordered it withheld from the journal; and that it ripened into a final judgment when it was ordered recorded, as of the date it was signed, that is, of the date of January 12, 1914. The finding that the trial judge signed the journal entry is supported by the record, but

the finding that the trial judge directed that it be withheld from the journal is so repugnant to any idea of fair dealing, equity, and good conscience that we find ourselves unable to adopt that finding. Neither can we adopt the conclusion reached by the learned chancellor that the judgment became final when ordered recorded, and related back to the date which the journal entry bears. If it was not a judgment when it was signed, an order directing that it be journalized could not make it a judgment. We know of no authority under the law, either express or implied, authorizing a trial judge to withhold his adjudications from the record or journal; nor does there seem to be any authority empowering the trial judge to breathe vitality as a judgment into an otherwise dead instrument by ordering it journalized. The court's order to record the decree could not affect it one way or the other. The order to record it could no more give it effect than ordering it withheld from the journal could destroy its effect. If it was at any time evidence of a solemn adjudication of property rights it constituted that from the minute the judicial signature was attached thereto.

After a careful examination of the record presented we think the proper conclusion is that the rights of the parties as to the 40 acres (homestead allotment) were never adjudicated; that in the hurry and dispatch of business the trial judge was misled into signing a journal entry covering the 40 acres when no judgment with reference thereto had ever been arrived at, determined, or announced. And, whether it was the fixed purpose to mislead the trial judge, or whether it was inadvertent and without wrongful intention to injure the plaintiff, it is not necessary to decide, for whichever it was the effect was the same; that is, the trial judge was misled into signing the journal entry, and no judgment was in fact rendered covering the property involved in this action.

In 15 R. C. L. 760, the rule is laid down that:

"Fraud is the arch enemy of equity, and a court of equity will relieve against a judgment obtained by imposition or fraud. * * * It matters little as to the mode or manner in which fraud is effected. A court looks to the effect, and asks if the result is a consequence of the fraud. For any description of mala fides practiced in obtaining a judgment equity will grant relief. If by fraud and misconduct one has gained an unfair advantage in proceedings at law, whereby the court has been made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of the advantage thus unfairly gained."

In 23 Cyc. 1025, it is said:

"Fraud practiced in the very matter of obtaining the judgment is regarded as perpetrated upon the court, as well as upon the injured party, and will warrant a court of equity in enjoining the judgment."

In vol. 2, Pomeroy's Equitable Remedies, sections 648, 650, and 651, it is said:

"Where fraud relates to the conduct of the suit, as where it prevents a party from asserting his rights, there is no fair adversary proceedings, and equity will interfere. The courts commonly speak of the former class as intrinsic and of the latter as extrinsic fraud, etc. Thus, it is generally said that it is extrinsic fraud, mistake, and the like which are grounds for relief."

"Relief is very freely granted where a judgment is taken in violation of a stipulation or agreement as to the conduct of the suit. It is apparent that there is no fraud in the technical sense; such conduct does not fall within the definition of 'actual' fraud—misrepresentation of existing facts. There is merely a breach of a contract; but the effects of such a breach are so manifestly against conscience that the courts will relieve, and base their jurisdiction on the ground of fraud. Likewise, where there is an agreement that a case is not to be tried without notice, relief will be granted against a judgment entered without notice. * * * The unconscionable conduct may assume many forms."

"If the judge himself is a party to the fraud, the ground for interference is especially strong; and in such a case it need not be shown that he intentionally did wrong."

In McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739, it was held that:

"A domestic judgment may be attacked in three ways: * * * (c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

In this case, if the plaintiff's evidence is to be accepted as presenting the true state of affairs, there never has been any adjudication in case No. 2192 as to the 40 acres (homestead allotment) and a court of equity should intervene and prevent the enforcement of the purported judgment. If the defendant's evidence is to be accepted as presenting the truth about what occurred, then attorney for the defendant was joined by the court in procuring a secret and clandestine judgment under such conditions as amount to divesting the plaintiff of his property without him or his attorneys knowing that it was being done; and under such conditions as to deprive him of his right of

appeal, and must be held to amount to fraud upon the rights of the plaintiff. The finding made by the learned chancellor that the trial judge signed the journal entry and directed that it be withheld from publication, which direction was complied with, and the finding that there was no fraud, are entirely inconsistent and are not supported by the record and cannot be upheld. The specific finding establishes that a gross fraud was perpetrated and the court should have so found.

A careful study of the record leads us to the conclusion that the evidence offered upon the part of the plaintiff, when taken alone, made out a case for plaintiff requiring that the judgment on which the defendant was basing his claim to the 40 acres of land should be set aside and vacated; that the evidence offered upon the part of the defendant, when taken alone, established that a palpable fraud had been perpetrated in procuring the judgment on which the defendant relies, and that a court of equity should intervene and prevent the enforcement of the judgment.

We recommend that the judgment of the trial court from which this appeal is prosecuted be reversed with directions to the district court of Seminole county to vacate it and set it aside; and to cancel and set aside the journal entry in case No. 2192 in so far as the same purports to show an adjudication of the rights of the parties as to the 40 acres homestead allotment, and to reinstate the cause and proceed to an adjudication of the rights of the respective parties as to the homestead 40 acres involved, as though no journal entry had been signed.

By the Court.: It is so ordered.