## J. M. RADFORD GROCERY CO. v. CITY OF ABILENE. (No. 562.)

Court of Civil Appeals of Texas. Eastland.
Sept. 13, 1929.

Rehearing Denied Oct. 4, 1929.

W. E. Lessing, of Abilene, for appellant.
H. L. De Busk, of Abilene, for appellee.

LESLIE, J. On October 15, 1928, the plaintiff, Radford Grocery Company, presented to the district judge of the Forty-Second judicial district its petition for a temporary writ of injunction against the city of Abilene, its mayor and board of commissioners, seeking to restrain them from removing a structure or platform maintained by it over the sidewalk on Oak street of the said city. A temporary restraining order was granted until the cause could be heard upon its merits, which hearing

was had in open court the following October 26th. At this time the plaintiff filed an amended petition, amplifying allegations previously made, and setting forth additional reasons why the injunction should be continued and perpetuated. The defendants answered by general demurrer, special exception, general denial, and affirmatively alleged such facts as deemed by them a sufficient basis for the removal of the structure, and prayed the court for an order to that effect. The defendants contended that the platform or structure was an obstruction in a public highway and a nuisance per se. Upon a very full hearing the trial court dissolved the temporary restraining order and refused relief by injunction. To this order and judgment the plaintiff excepted, and prosecutes this appeal.

In testing the correctness of the trial court's judgment upon the testimony adduced, certain conclusively established facts must be borne in mind. In the first place, plaintiff is not a public service corporation, operating under and by virtue of a franchise incident to such organizations. It is a private corporation, operated for private gain, being a wholesale grocery establishment. Further, the city of Abilene is a municipal corporation, administered by chosen officials, and governed, under the provisions of a special charter, the general laws, and the Constitution of the state.

As applied to the subject-matter of this controversy, certain provisions of that charter and the general laws are material. For instance, section 9, art. 2, of the charter provides:

"The city of Abilene shall have power to enact and enforce ordinances for the protection of the health, life and property of its citizens, and to *prevent and summarily abate and remove nuisances:* * * * Provided, further, that the specification of particular powers herein granted shall not be construed as a limitation upon the general powers herein granted, it being intended by this act to grant to and bestow upon the inhabitants of the city of Abilene full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter or by some general law of the state of Texas, or by the provisions of the Constitution of this state."

Section 58 of said charter, under the heading of "Municipal Powers," provides:

"The city of Abilene, through its board of commissioners, shall have all the powers that are now or that hereafter may be granted to cities and towns by *general law,* and in addition thereto *shall have such powers as are granted by this act.*"

Section 97 of said charter, under the subject of "Streets," provides:

"The board of commissioners shall have power to lay out, establish, open, alter * * * supervise, maintain and improve streets, alleys, sidewalks, * * * within the city of Abilene, and shall have exclusive power and control over the same; to prevent and summarily abate any obstruction or encroachments thereon. * * *"

Section 110 of the charter provides that:

"The term 'public highway' as used herein shall be construed to mean and include any street, avenue, alley or highway, dedicated to public use * * * within the city of Abilene."

Article 1015, Rev. St. 1925, a general law, enumerating other powers granted governing bodies of cities, provides, in section 11, that they shall have authority "to abate and remove nuisances and to punish the authors thereof * * * and direct the summary abatement thereof. * * *"

Section 23 of said article 1015, dealing with obstructions of public ways, etc., provides that such bodies may have authority "to prevent the encumbering of the streets, alleys, sidewalks * * * with any vehicle * * * lumber, posts, awnings, * * * or any other substance or material whatever. * * *"

Article 1175, Rev. St. 1925, enumerates the powers granted cities adopting charters under the Home Rule Act: "To control, regulate and remove all obstructions or other encroachments or encumbrances on any public street. * * *"

From the foregoing it appears that the city of Abilene has an abundance of authority emanating from more than one statutory enactment empowering it to deal with obstructions in its streets and on its sidewalks. We now pass to the consideration of other elements involved in the case.

The structure which the plaintiff seeks to perpetually maintain, and which the defendant is endeavoring to remove, is a loading platform on the west side of plaintiff's wholesale grocery building, situated in the northwest corner of block 4, city of Abilene, at the intersection of South First and Oak streets. The building is 110x130 feet in dimension. Its west side runs squarely with the property line, and the platform or structure complained of covers the entire sidewalk, extending from the curb line to the side of the building, a distance of 12 feet. In length the platform is substantially that of the building, and must be mounted at each end thereof by a flight of steps, which, according to the testimony, act as a deterrent to pedestrians desirous of passing along the sidewalk at that place. The platform is not and was not constructed or elevated in accordance with the city's sidewalk regulations, as determined by ordinance. A regulation sidewalk at this point of Oak street would extend from the top of the curb to the property line, and the coping would incline slightly upward until it reached the property line, or the west wall of plaintiff's building. The platform in question does not join the curb, but is 3½ to 4 feet

above it, and extending toward the building as indicated. It is not a sidewalk, nor was it so designated in the testimony.

The platform is used by the plaintiff for loading and unloading merchandise. For this purpose it is practically in constant use, stacks of goods being continuously loaded and unloaded therefrom. In fact, the use made of it is such as is incident to a thriving wholesale business of large proportions. Trucks are continuously backed up against the platform for loading and unloading, especially throughout the day, and the front end of such vehicles are headed into the open street, thus occupying a large portion of the paved thoroughfare adjacent to the platform. There is testimony to the effect that it is not unusual for such trucks to be lined up throughout the length of the platform.

Plaintiff's building and platform are in a built-up portion of the city and in an important industrial center. The Bankhead Highway, a state and national thoroughfare, passes over and along Oak street, and the route has been beautified and benefited by the city's having designated it as the White Way through the municipality. The courthouse is in the second block south of the one in which appellant's business is situated and on the same side of the street. There is much testimony to the effect that pedestrians coming from the courthouse and that portion of the city, who are desirous of reaching the heart of the city to the north of the Texas & Pacific Railroad, usually, on approaching the plaintiff's platform, cross Oak street to the west side thereof, or continue their course northward by passing over and along the open street, evidently preferring that course and assuming the hazard thereof, rather than mount the plaintiff's platform and navigate their way over the same through busy employees and moving merchandise.

This reflects the situation presented by the presence of the plaintiff's platform extending over the city's sidewalk. The plaintiff contends that, prior to the construction of said building and platform, and as far back as 1905, it made application to the municipal corporation of the city of Abilene for what it designates in its pleading as "a perpetual easement over and on that portion of Oak street dedicated for sidewalk purposes, and immediately west or northwest of the lands owned by plaintiff, and upon which it desired to build said warehouse, and for permission to build said warehouse and elevated loading platform as the same now exists."

In other words, plaintiff's petition declares upon a vested property right in said private corporation to perpetually maintain said platform, and to operate its private enterprise upon what it admits to be a sidewalk of a public street dedicated for that purpose. As a part of its contention plaintiff alleges that the city of Abilene, through its duly consti-

tuted officers, is threatening to remove the platform, and that such removal will be a destruction of its private property, without due process of law. Other minor contentions will be noticed later.

Coming now directly to the major point at issue, and after a careful consideration of the testimony adduced bearing upon the nature of the structure sought to be permanently maintained by the plaintiff, we are of the opinion that it is an unreasonable and unlawful obstruction or encroachment upon the street or highway. It comes clearly within the terms and description of a nuisance per se. We find no lawful authority warranting its original construction or its future permanent maintenance. Supporting this conclusion, we quote from some of the authorities and cite others.

As said by the Supreme Court of Illinois in Hibbard et al. v. City of Chicago, 173 Ill. 91, 50 N. E. 256, 257, 40 L. R. A. 621:

"The public streets of a city are dedicated to the public for public use, and are subject to the control and management of the City Council, but that body has no power to alien or otherwise encumber such streets, so long as they are public streets, but must hold them in trust for public uses only. The municipal corporation can grant no easement or right therein not of a public nature, and the entire street must be maintained for public use. Hence no individual or corporation can acquire any portion of the street for exclusive private use to the exclusion of the public. * * * *A permanent encroachment upon a public street for a private use is a purpresture, and is in law a nuisance."* (Italics ours.)

To the same effect we quote from Elliott on Roads and Streets, vol. 2, § 828:

" 'Public highways belong, from side to side and end to end, to the public,' and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public. This is the only safe rule, for, if one person can permanently use a highway for his own private purpose, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden, not only to adjoining owners, but to all the taxpayers and traveling public as well. Thus expedience forbids any other rule. But, even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled, not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler, and if this be true it necessarily follows that there can be no

rightful permanent use of the way for private purposes."

This is an accurate statement of the legal principles which clearly indicate the rights and duties of the plaintiff and the defendant in regard to the subject-matter of this litigation, and practically dispose of every contention suggested by the record. The rule taken from the text is frequently quoted with approval by the appellate courts of Texas, and it is quite fully set out in an opinion by the San Antonio Court of Civil Appeals through Chief Justice Fly, in Dozier v. City of Austin (Tex. Civ. App.) 253 S. W. 554, 556, where the authority of the city to remove an obstruction from an alley was under consideration. In that opinion the court rather emphasized the rule and added the following observation, especially pertinent in considering some of the contentions advanced here:

"No question of the reasonableness or unreasonableness of a permanent obstruction can ever arise, but if it is a permanent obstruction it should be abated. Public rights cannot be destroyed or impaired by * * * desires of the individual who may seek to advance his own ends. * * * The costliness of improvement forming encroachments on a street can offer no defense to an action to remove the obstruction, because such improvement was knowingly * * * made with no basis but the desire to extend the possessory right of the citizen to public property."

For other authority to the effect that permanent obstruction of a street or public highway is a nuisance per se the following authorities are added: Santa Fé Townsite Company v. Norvell (Tex. Civ. App.) 207 S. W. 960; Boone et al. v. Clark (Tex. Civ. App.) 214 S. W. 607; Schott v. State, 7 Tex. App. 617; Elliott on Roads and Streets, vol. 2, § 827; Lacy v. Oskaloose, 143 Iowa, 704, 121 N. W. 542, 31 L. R. A. (N. S.) 853; State v. Mayor of Jersey City, 52 N. J. Law, 65, 18 A. 586, 696; Galloso v. City of Sikeston, 124 Mo. App. 380, 101 S. W. 715; People of Illinois v. Western Cold Storage Co., 287 Ill. 612, 123 N. E. 43, 11 A. L. R. 437.

The plaintiff makes some contention that the city of Abilene is about to summarily remove the platform in question, and this is urged as a special ground for injunctive relief. The record before us presents no such question. On the contrary, it appears that the city has elected to give the plaintiff a reasonable notice, at least 60 days from the service thereof, in which to remove the platform before proceeding by its agents to accomplish that result. There is no evidence indicating any effort on the part of the city to remove the platform in undue haste, or in such manner as to work any unnecessary injury to the plaintiff's building and business.

■■ Should we be mistaken in the above view, our holding is, nevertheless, correct for a further reason. Upon the subject of summary removal without legal formality by pub-

lic authorities of unlawful obstructions in streets and highways, Corpus Juris (29 C. J. p. 625, § 380) lays down the following rule:

"Highway officers or other public authorities whose duty it is to keep highways in repair and free from obstruction, have authority under their general powers or by express statutory provisions, summarily to remove obstructions."

Elliott on Roads and Streets, vol. 2, § 845, states the rule in substantially the same language:

"A municipality may also, in a proper case, summarily abate a nuisance, and especially an obstruction in a public street constituting a nuisance, by itself removing the nuisance."

The author cites numerous authorities supporting the proposition, and among them is one by our Supreme Court, Compton v. Waco Bridge Company, 62 Tex. 715.

Even more conclusively establishing the right of such summary removal by public authorities of material obstructions and nuisances per se in streets, the following authorities are specially referred to: City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924; Perry v. Ball et al., 52 Tex. Civ. App. 134, 113 S. W. 588 (error refused); Newton v. City of Dallas (Tex. Civ. App.) 201 S. W. 703 (writ refused).

Further, the language of the various statutes quoted in the outset in this opinion is so explicit and positive upon the power of the city of Abilene to summarily remove material obstructions and nuisances per se from its streets that it is, perhaps, unnecessary to cite and discuss the general authorities just reviewed.

■ As to the plaintiff's contention that the city council granted it a general permission to construct the platform in question, we are of the opinion that the city was without any authority to grant such permission. In 19 R. C. L. § 24, it is said:

"An ordinance having the effect of diverting the streets from a public to a private use, or of unreasonably appropriating them to a use other than that of ordinary travel by pedestrians and vehicles, is ultra vires and void."

Mr. Dillon, in his work on Municipal Corporations, § 1176, states:

"Without express or plain authority of such nature, a city cannot grant a permanent easement in a street for the benefit of private parties, and for an exclusively private purpose."

■■ It will be noted that the purpose of this suit is to establish "a perpetual easement over and on that portion of Oak street dedicated for sidewalk purposes," as stated in the plaintiff's petition. It is generally held that a municipal corporation holds its streets, alleys, and sidewalks in trust for the public, and, whatever rights the city may have over the same by virtue of the Constitution or laws, such powers are essentially those of a

trustee for the benefit of the cestui que trust, that is, the public, and such powers are liberally construed for the benefit of the public, and strictly construed to avoid public detriment. The governing body of a city is without authority to donate or barter away for private use the public rights in streets and highways, or to grant any permanent or unlimited use or easement by ordinance of otherwise to any individual or private corporation engaged in the transaction of private business and for their respective uses as such. City of San Antonio v. Rische (Tex. Sup.) 38 S. W. 388 (writ denied); Quanah, Acme & P. Ry. Co. v. Swearingen (Tex. Civ. App.) 4 S.W.(2d) 136 (writ refused); Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288 (writ denied); Galveston Commercial Ass'n v. Ort. (Tex. Sup.) 165 S. W. 907; State ex rel. v. Mulligan, 173 Mo. App. 718, 160 S. W. 9; People of Illinois v. Western Cold Storage Co., 287 Ill. 612, 123 N. E. 43, 45, 11 A. L. R. 437, and annotations thereunder.

The authorities of this state are just as emphatic, but perhaps not quite as expressive, as the opinion by the Supreme Court of Illinois in the opinion last cited, and from which we venture a quotation at this time, since that opinion is in point on practically all the contentions made by the plaintiff in the record before us. That was a case involving the right to maintain a permanent loading platform built over a sidewalk for the purpose of permitting the loading of goods directly from an adjoining building into wagons. Such was held to be a nuisance which could not be authorized by the municipality, although provision was made for its use by pedestrians by steps at one end and an incline at the other. The extract from the opinion is:

"This case does not differ materially from that of Chicago Cold Storage Warehouse Co. v. People, 224 Ill. 287, 79 N. E. 692. We said there that it could not be successfully contended that 'the purpose of the ordinance was for the benefit of the public generally. It was for the convenience of the storage company and those doing business with it at its warehouse. Nor can it be successfully contended that the platform as erected is not a material obstruction to the sidewalk, and does not place the general public to great inconvenience in the use of the same. While the ordinance provides that the sidewalk may be used for public purposes, yet in order to use it those passing over it must go up and down five or six steps at either end. If it is not a nuisance and an obstruction, then the city might authorize private parties to erect and maintain bulkheads on every street in the city, of any height. Public streets and sidewalks cannot be lawfully used for any such purpose. We are of the opinion that the platform in question was a nuisance, and such an obstruction to public travel as entitled appellees to have it removed."

A fair comparison of the facts of the in-

stant case with those involved in the opinion from which the above extract is taken reveals at once that the facts in this case offend as much, if not more, against public interest than did those in the last-cited authority.

 It is unnecessary to give any considerable attention to the plaintiff's contention that the district within the city and lying east of Oak street, embracing the locality of the plaintiff's business house, had been by the city of Abilene zoned and designated as a manufacturing and wholesale district. As to this the court's judgment is necessarily a finding to the contrary, and a review of the testimony leaves us in accord with the trial court's conclusions, which in such case it is our duty to sustain.

Further, said building and its accompanying platform were erected about 1905, and there was no statutory authority for zoning until 1923, and if that late act granted any power to the commissioners of the city of Abilene to extend to individuals and private corporations special privileges and easements of a personal and private nature in the public streets of that city, our attention has not been called to the same. We have been unable to find any statutory authority for such.

 Another of the plaintiff's contentions will be noticed briefly. Much emphasis is laid by it upon the fact that its loading platform is a necessity in connection with its business, and that it was erected at considerable expense. The same contention was made in the case of State v. Mulligan, 173 Mo. App. 718, 160 S. W. 9, 11, and in disposing of it the court used this language:

"It is urged that these loading docks are business necessities. That may be, but that should have been thought of and provided for when the building was erected by so locating it as to have the docks on defendant's property instead of attempting to use the public sidewalk."

Previously in this opinion we quoted the courts of our own state, Dozier v. City of Austin, wherein it was held:

"The costliness of improvement forming encroachments on a street can offer no defense to an action to remove the obstruction, because such improvement was knowingly and wilfully made with no basis but the desire to extend the possessory right of the citizen to public property."

Such, in substance, seems to be the answer given this contention in every jurisdiction in which it has been urged, and, being of the opinion that reason supports it, we believe the facts of this record require its application here.

We do not believe that the testimony in this record establishes any probable right in the plaintiff entitling it to the injunction prayed for, and upon the facts conclusively established we are of the opinion that the learned trial judge was correct in dissolving

the temporary injunction granted, and refusing to further continue the same in force.

The judgment of the trial court will be affirmed.