The STATE of Oklahoma ex rel. Gil BURK et al., Appellants,

v.

OKLAHOMA CITY, a municipal corporation, et al., Appellees.

No. 45102.

Supreme Court of Oklahoma.

Oct. 30, 1973.

Rehearing Denied May 14, 1974.

Thomas J. Lee, John Connolly, Oklahoma City, for appellants.

V. P. Crowe, Monty L. Bratcher, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellees American Fidelity Assurance Co., Fidelity National Bank and Trust Co., The Two Thousand Classen Building Corp. and C. W. Cameron.

Roy H. Semtner, Giles K. Ratcliffe, Oklahoma City, for appellees The City of Oklahoma City, James H. Norick, Mrs. Patience Latting, Ben Franklin, Rowe Cook, John M. Smith, George Sturm, A. L. Dowell, O. D., Nelson E. Keller, Bill H. Bishop and Robert H. Oldland.

HODGES, Justice.

The Two Thousand Classen Building was constructed by American Fidelity Assurance Company (American Fidelity) across and upon Northwest 20th Street between Classen Boulevard and Western Avenue in Oklahoma City, Oklahoma (N.W. 20th). This street was dedicated to the use of the public. It was, however, purportedly vacated on the grounds that it had been occupied adversely to the public for more than five years.

Appellants, under their first cause of action, seek damages resulting from the construction of a public and private nuisance on a public street. They request that the building be removed and the street restored to its original condition, or that title to the building be quieted in the city because they allege that the street is held in trust by the city for the use and benefit of its citizens. They also asserted that the decree of vacation entered by the district court was void by reason of fraud practiced upon the court. Under their second cause of action they seek to recover for the city the land and the building, which claimed to be owned by American Fidelity and to have a penalty assessed against the appellees to be paid to appellants and their attorneys pursuant to the taxpayers statute, 62 O.S.1961, §§ 372, 373.

The idea of building the Two Thousand Classen Building across a part of Northwest 20th Street had been conceived by C. W. Cameron (Cameron), the President of the Two Thousand Classen Corporation and Chairman of the Board of American Fidelity and his associates, one or two years before construction began. Cameron testified that it was more convenient to join the buildings together. One of the reasons for this was that the same heating and cooling system could be utilized.

Cameron and his lawyer talked to "practically" every member of the City Council in an effort to carry out his plan. The discussions with the members of the City Council concerned the "simple question" of the possibility of closing N.W. 20th Street between Western Avenue and Classen Boulevard and joining all of the building complex together. He also queried the council as to whether there would be any serious objection to this, or should the new building be built North of N.W. 20th Street and the then existing buildings.

On June 25, 1968, Cameron's attorneys, filed notice of intention to vacate a portion of the plat of University Addition. This notice was published in the Daily Law Journal-Record on June 27, 1968, and an Affidavit of Posting was executed. On the 29th day of June, 1968, a purported application to vacate that portion of Univer-

sity Addition lying between Classen Boulevard and Western Avenue was filed with the District Court Clerk of Oklahoma County. The application stated that the applicants were the sole abutting property owners of the street and that the street had been occupied adversely to the public for more than five years. On the same day, an Answer was filed by the defendant, City of Oklahoma City.

There was no attempt by the city council to exercise its power to vacate N.W. 20th Street under the provisions of 11 O.S.1961, § 659. This statute permits vacation of streets by the city council when it is deemed necessary or expedient. However, it does not permit vacation of a public street for private use. See Hedrick v. Padon, 333 P.2d 552 (Okl.1958). Instead, a resolution directing the municipal counselor to approve as to the form of the purposed decree vacating Northwest 20th Street between Western Avenue and Classen Blvd. was adopted by the City Council and approved by the Mayor of the City of Oklahoma, July 23, 1968.

Cameron et al. attempted to have the street vacated under the provisions of 11 O.S.1961, § 524. It provides in pertinent part:

" * * * If the application shall be by the owner of owners of a portion of such platted tract for the vacation of such portion only, and it shall appear that the portion desired to be vacated has never been actually used for town or city purposes, or that the platted streets and alleys on or across such portion have never been used by the public, or that the public has for more than five years abandoned such by non-user, or that the same has been enclosed and occupied adversely to the public for more than five years, then the court may vacate such portion of said plat. * * * "

The allegation and finding that the street had been enclosed and occupied adversely to the public for 5 years was material to the jurisdiction of the court to vacate the street.

The decree of vacation was entered by the district court on August 8, 1968. Wherein the court "having examined the pleading and file and having heard the evidence and being fully advised in the premises" made the finding that the street had been occupied adversely to the public for more than five years.

On or about the 1st day of September, 1968, construction of the Two Thousand Classen Building was commenced. In July of 1969, this action was commenced with additional parties plaintiff and defendant joined in December 1, 1969.

The cause proceeded to trial on the 18th day of May, 1971, and continued to the 19th day of May, 1971. Defendants' Demurrer to plaintiffs' evidence was sustained by the trial judge and the case dismissed as to the defendants, Norick, Latting, Sturm, Keller & Oldland, with the concurrence of plaintiff's counsel. Also, the trial court sustained demurrers of the defendants, City of Oklahoma City and individual defendants, Franklin, Cook, Smith, Dowell and Bishop.

A further trial was held on the 4th day of June, 1971 and thereafter on June 7, 1972, the Court entered his Findings of Fact, and conclusions of law. He found that the allegation of the application and the finding of the court to the effect that N.W. 20th had been occupied adversely to the public for more than five years was false and the inclusion of the allegation in the application and decree was known to be false by Cameron at the time they were made. He stated in his conclusions of law that:

"The known false allegation in the application and finding in the Decree vacating the subject portion of Northwest Twentieth Street urged upon the court by the applicants who are defendants in this case constituted a falsification of a jurisdictional fact and a fraud upon the court sufficient to justify the vacating of that decree in a proper case."

However, the court concluded as a matter of law that appellants were guilty of

laches and thereby estopped from obtaining the equitable relief they sought. We do not agree.

The court found the defendants, the Two Thousand Classen Building, the American Fidelity Assurance Company and C. W. Cameron responsible for resulting damages for the diminution of the value of the property of Hali Jean Wells and William Byron and Rhoda P. Hayes, in the amount of $7,000.00 each. The court held that Myrta Rorem sustained no compensible damage. The judgment of the trial court in this regard is affirmed.

Appellees complain that appellants, Burk and Ray, are no longer parties to the first cause of action. They assert that the trial court sustained a demurrer to the amended petition as to them, and that they did not assign this as error in their motion for new trial, nor in their petition in error. Appellees, therefore conclude, that Burk and Ray have abandoned their first cause of action. We have examined the record and find no merit in this proposition as it concerns the appellees, the Two Thousand Classen Building Corporation, American Fidelity Assurance Company, or C. W. Cameron. If indeed, there was any abandonment present, it was as to the City of Oklahoma City and the named defendant councilmen, and inasmuch as we find the trial court's order sustaining their demurrer as to both causes of action to be proper, as hereinafter explained, the consequence of any abandonment is immaterial.

■ The general rule is that title to streets and alleys is held by the municipality in trust for the public, and not in a proprietary capacity. The municipality is without power to alienate them. A city cannot give away its rights in public streets, nor may it sell or barter away any streets it holds in trust for the benefit of the public. Town of Choteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, 383 (1944), Lindauer v. Hill, 262 P.2d 697, 699 (Okl.1953); City of Shawnee v. Thompson, 275 P.2d 323, 324 (Okl.1954).

The Oklahoma statute, O.S.1961, § 515 is in accord with this rule. It provides:

"When the plat or map shall have been made out and certified, acknowledged and recorded as required by this Article, * * * the land intended to be used for the streets, alleys, ways, commons or other public uses in any town or city or addition thereto shall be held in the corporate name thereof in trust to and for the use and purposes set forth and expressed or intended."

The plat dedication on which appellants rely states:

" * * * the annexed plat which is hereby adopted as the plat of the above described land, under the name of 'University Place', in addition to Oklahoma City, and do hereby dedicate all of the streets and avenues shown upon said plat to the public use of said city."

■ The mere fact that the vacation of the street which may be a valuable property is granted on the petition of a private individual or corporation who owns abutting property who will thus be enabled to use the vacated street in his business, and that the city received no compensation for it, does not of itself invalidate the vacation nor constitute such a fraud or abuse of discretion as in the absence of further showing will authorize intervention by the court to declare the vacation void. Feldman v. City of Omaha, 184 Neb. 226, 166 N.W.2d 421, 423 (1969); Thomas v. Jultak, 68 Wyo. 198, 231 P.2d 974, 981 (1951).

■ However, it is held that it is unlawful in this jurisdiction to vacate a public street or highway which has not been abandoned or occupied adversely to the public for more than five years, merely to serve the convenience of a private individual or corporation. City of Stillwater v. Lovell, 159 Okl. 214, 15 P.2d 12, 16 (Okl. 1932).

■ In this case, as in the case of Hedrick v. Padon, 333 P.2d 552 (Okl.1958), there is no pretense that the public interest required the vacation of any part of the

street or that any public interest would be subserved by the vacation. The vacation attempted to destroy the public right and use of the public for the sole purpose of enabling a private person who owned the property abutting the street to occupy a portion of the street with a permanent structure. Hedrick v. Padon p. 555 supra, holds that vacation by the municipal authorities in such a case is ultra vires and void.

The evidence stands uncontroverted that the allegation in the application to vacate Northwest 20th Street between Western and Classen which stated that this portion of the street had been adversely occupied for more than five years was false and all parties knew it to be false. During the five years prior to the attempted vacation of the street, it was used, not only by the public in general, but also by Cameron and members of the City council. The Department of Traffic Control at the direction of the municipal counselor, conducted a survey which showed that approximately 386 automobiles used the street *daily*. The director of the department stated in his letter to the city counselor that "from a traffic standpoint, all streets carrying a reasonable amount of traffic are useful." He then declined to comment further concerning the closing of N.W. 20th Street.

The procedure to be followed in the vacation of a street is prescribed by an exclusive statutory method which requires substantial compliance. Town of Choteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, 383 (1944).

The district court is without jurisdiction to vacate and close public streets which have been dedicated to public use and which are being used by the public for the purpose for which they were dedicated. City of Frederick v. Mounts, 159 Okl. 85, 14 P.2d 236, 237 (1932).

At the initial hearing in which the street was purportedly vacated, the court was deceived by the fraudulent material jurisdictional allegation that the street had been adversely occupied for more than five years, and by a concealment of the truth as to such facts. The court was therefore without jurisdiction of the subject matter. The decree of vacation was void ab initio. See Starke v. Starke, 155 Kan. 331, 125 P. 2d 738, 740 (1942). See also 46 Am.Jur. Judgments § 24 p. 329.

Where the court has been deceived by fraud or misconduct, and the court is thereby made an instrument of injustice, equity will intervene to prevent the perpetrator from reaping the benefit of the advantage which was unfairly gained. In such case, the manner in which the fraud is effected is of little significance. The court will look to the effect of the act and inquire if the result is the consequence of the fraud. Jones v. Snyder, 121 Okl. 254, 249 P. 313, 316 (1926).

It is contended by appellees that if fraud was indeed perpetrated upon the court, it was not extrinsic fraud; and that the court will not grant relief against a judgment obtained through fraud except in cases where such fraud is extraneous and foreign to the record. Equity has inherent power to grant relief from a judgment when it has been obtained by fraud practiced upon the court which wrongfully induced it to assume jurisdiction. Especially is this so where the rights of the public are involved as in the present case.

The case of Johnson v. Petty, 118 Okl. 178, 246 P. 848, 849, 850 (1925) holds:

> *"Where by means of fraud or perjury as to the jurisdictional facts, a court is imposed upon and induced to assume jurisdiction, where in reality none exists and which never could have been exercised if the truth had been known, such fraud is extrinsic,* and the judgment or order so obtained may be annulled and vacated in a proper proceeding in a court of equity." (Emphasis ours).

The court went on to say at p. 850 that false representations given to establish jurisdiction by which the court is imposed upon and induced to exercise jurisdiction where none exists requires that "In such cases courts of equity grant relief, not only

to prevent a wrong to the injured party, but 'to frustrate an attempt to make the court an instrument of oppression in aid of a surreptitious sham founded on wrongful artifice.' "

In Cone v. Harris, 104 Okl. 114, 230 P. 721, 723 (1924) the court cited the rule that:

"Fraud is the arch enemy of equity, and a court of equity will relieve against a judgment obtained by imposition of fraud. * * * It matters little as to the mode or manner in which fraud is effected. A court looks to the effect, and asks if the result is a consequence of the fraud. For any description of mala fides practiced in obtaining a judgment equity will grant relief. If by fraud and misconduct one has gained an unfair advantage in proceedings at law, whereby the court has been made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of the advantage thus unfairly gained."

The cases relied upon by appellees, Metzger v. Turner, 195 Okl. 406, 158 P.2d 701 (1945) and Sadberry v. Hope, 444 P.2d 175 (Okl.1968) did not involve fraud upon the court, but between the parties. However, the Metzger case, 158 P.2d at page 704, supra states the general rule that the authority to set aside judgments for fraud is limited to cases where the fraud complained of was practiced in the very act of obtaining the judgment. This is precisely what occurred in this case.

■■■ The principle that streets for their full length and width are for public use and that any permanent structure encroaching thereon is a nuisance per se is of ancient origin and of almost universal application. City of Emporia v. Hemphrey, 132 Kan. 682, 297 P. 712, 715 (1931); J. M. Radford Grocery Co. v. City of Abilene, 20 S.W.2d 255, 257 (Tex.Civ. App.1929); Smith v. McDowell, 148 Ill. 51, 35 N.E. 141, 145 (1893). See also 50 O.S.1961, §§ 1, 2.

It is provided by 50 O.S.1961, § 7 that:
"No lapse of time can legalize a public nuisance amounting to an actual obstruction of public right."

See also Updegraff v. City of Norman, 287 P.2d 909, 912 (Okl.1955); Town of Chouteau v. Blankenship, 152 P.2d p. 380 supra.

■■■ The trial court found that fraud had been perpetrated upon the court which vacated the street, but he refused to declare the vacation void. He instead applied the doctrine of laches. The doctrine of laches has no application to this case. The material jurisdictional allegation that the street had been adversely occupied for more than five years on which the decree of vacation was based was false, and was known to be false by all parties. This fraudulent allegation deprived the court of jurisdiction and resulted in the vacation of the street being void ad initio. The private use of the public street was a trespass from its inception. The construction of a permanent structure thereon constituted a public nuisance per se and was unlawful each day it continued. Equity abhors fraud and diligently seeks to prevent it or redress it where found. Buford v. Mochy, 224 N.C. 235, 29 S.E.2d 729, 731 (1944). A court of equity will not assist one in extricating himself from circumstances which he has created. Sautbine v. Keller, 423 P. 2d 447, 451 (Okl.1966). The general rule is that where a party has participated in fraud, equity will grant such party no relief. Becker v. State, 312 P.2d 935, 942 (Okl.1957). Only the most distorted interpretation of equitable principles would permit one, who has deliberately deceived and misled the court, and who bases his claim on an original and continued wrong, to successfully utilize the equitable defense of laches to sanction and enforce his fraudulent claim.

Appellants also seek to enforce the provisions of the "taxpayers statutes", 62 O.S. 1961, §§ 372, 373, under their second cause of action. They are endeavoring to recover the land and building for the use and

benefit of the City of Oklahoma City and to assess a penalty against the defendants.

It is provided by 62 O.S.1961, § 372, that every officer of the city who orders or directs or who knows of the payment of money or transfer of any property belonging to the city in pursuance of any unauthorized, unlawful or fraudulent agreement shall be penalized double the value of any money paid or property transferred to be recovered at the suit of proper officers of the city or any resident taxpayer.

Title 62 O.S.1961, § 373, states that upon the refusal of proper officers to institute a suit to recover the property or money after written demand on them to do so by ten resident taxpayers of the city, any resident taxpayer of the city affected by the payment or transfer may bring suit in the name of the State of Oklahoma for the recovery of the property. In such event, the municipality is made defendant, and one-half the money and one-half the value of the property recovered at the expense of the resident taxpayer shall be paid to him as a reward.

■ The statutes require the payment of money or transfer of property belonging to the city before they are applicable. There is no allegation that any money was exchanged. The City Council held the property in trust and was unable to sell, barter or transfer it for a private use. The vacation proceedings before the court were void because of lack of jurisdiction. Therefore, the property was never actually transferred nor the street legally vacated. The provisions of 62 O.S.1971, §§ 372, 373 are inapplicable. We find the trial court's order sustaining the demurrer of the City of Oklahoma City and the named councilmen and sustaining the demurrer as to all defendants on the second cause of action was proper and correct. We also find no evidence that the defendants, City of Oklahoma City, and named councilmen created a public nuisance, or that they were guilty of any fraud or collusion. The City of Oklahoma City and the City Council did not attempt to vacate N.W. Twentieth

Street under the authority of 11 O.S.1961, § 659. Nor does the evidence support the conclusion that any property was transferred, or money paid pursuant to any unlawful contract. Although the council consented to the vacation of the street by Cameron, et al. by passing the resolution approving the decree of vacation, it did not actively participate in the vacation of the street.

The problem then remains: since the vacation of the street was void ab initio; and the City Council holds the street in trust and cannot barter, transfer, or trade it away for the benefit of a private individual or corporation; and the doctrine of laches and the taxpayers statute are inapplicable; what is the solution to the quagmire?

There is precedent for requiring removal of the structure. In Dozier v. City of Austin, 253 S.W. 554, 556 (Tex.Civ.App. 1923) the court stated:

"* * * [I]f it is a permanent structure it should be abated. Public rights cannot be destroyed or impaired by the selfish desires of the individual who may seek to advance his own ends, regardless of the dictates of justice and equity. The costliness of improvement forming encroachments on a street can offer no defense to an action to remove the obstruction, because such improvement was knowingly and willfully made with no basis but the desire to extend the possessory right of the citizen to public property. * * * In abating nuisances in streets, equity does not measure its action by the amount of damage that would be inflicted by the abatement on the author of the nuisance."

■ Appellants suggest that since the property on which the building was constructed is held in trust that the building is a business fixture affixed to the land and that title to it should be quieted in the City of Oklahoma. Although, this could as a legal and technical consideration be done, we believe the best solution is an attempt to restore status quo. An absolute

and literal restoration of the parties to their former position is not feasible, nor is it required. Such restoration as is reasonably possible and demanded by the equities of the case is sufficient. Equity will not insist on an absolute and literal restoration of the parties to status quo where it would be purposeless, useless and foolish. The rule is founded on the principle that he who seeks equity must do equity. Where complete restoration of the parties to their former condition is not essential to the complete administration of justice between the parties, it will not be required. The rule in regard to the matter is equitable not technical. Where the actions of one of the parties renders the restoration of status quo impossible, restoration need only be made as nearly as the circumstances permit. Shields v. Meyer, 183 Kan. 111, 325 P.2d 29, 34, 35 (1958); O'Keefe v. Rouledge, 110 Mont. 138, 103 P.2d 307, 310 (1940); Proper v. Proper, 183 Minn. 481, 237 N.W. 178, 179 (1931); Maupin v. Missouri State Life Ins. Co., 214 S.W. 398, 401 (Mo.App.1919). This means that although the parties themselves cannot be restored to the situation existing before, their *rights* in respect to the property which forms the subject matter in controversy shall be placed in status quo. Carpenter v. Mason, 181 Wis. 114, 193 N.W. 973, 974 (1923). The United States Supreme Court stated the rationale for the rule in Neblett v. MacFarland, 92 U.S. 101, 103, 23 L.Ed. 471, 472 (1876):

> " * * * The court proceeds on the principle that, as the transaction ought never to have taken place the parites are to be placed as far as possible in the situation in which they would have stood if there had never been any such transaction."

The cause is therefore reversed and remanded with directions for the trial court to assess the value of the land in question and the annual rental value thereof. This street is and has always been held by the City Council in trust for the public. Appellees are directed to pay an annual lease payment to the City Council of Oklahoma City as trustees. This payment shall be made annually as long as the building remains on the city property. The annual lease payments from date of taking, August 8, 1968, until the value of the annual payment is determined by the trial court shall bear interest at the rate of 10% per annum.

We wish to make it clear that the portion of the street which appellees fraudulently sought to vacate is held in trust. This trust is imposed by law. The owners of the building have the option of removing the building and restoring 20th street as a public street, or paying annual lease payments to the city for as long as the building encroaches on N.W. 20th Street. The amount of annual payment set by the court shall remain effective for 5 years from the date the district court determines the amount of the lease. At that time, and every five years thereafter, the trustees may reassess the circumstances and conditions, and as any landlord, may adjust the rent. In the days of rampant inflation what is adequate today may be grossly insufficient in the future.

We are cognizant of Green v. City of Norman, 455 P.2d 58 (Okl.1969) where this Court held the City of Norman had no authority to lease a dedicated street to a corporation for private use. The circumstances of this case and the position in which we find the parties have compelled us to reach this equitable result notwithstanding Green v. City of Norman, supra.

■ The attorneys for appellants have succeeded in restoring the trust property to the citizens of Oklahoma City and are entitled to compensation for their success.

■ It is well settled that ordinarily a court in the exercise of equitable jurisdiction may award attorney fees when the services performed result in a successful suit for the preservation, or increase of a common fund or a common property for the benefit of a class of persons entitled to the fund or property. See State v. Oklahoma Tax Commission, 194 Okl. 359, 151 P.2d 797, 798 (1944); Pensioners Protec-

tive Ass'n v. Davis, 112 Colo. 535, 150 P.2d 974, 975 (1944); City of Wewoka, Okl. v. Banker, 117 F.2d 839, 840 (C.A. 10th Cir. 1941); 38 A.L.R.3d 1386; 7 C.J.S. Attorney and Client § 193 p. 1098.

The rule springs directly from the authority of the Court to do equity in a particular situation and had been applied under variant circumstances wherever it is required by right and justice. United States v. Anglin & Stevenson, 145 F.2d 622, 624 (C.A. 10th Cir. 1944).

Ordinarily attorney fees are assessed from the property or fund which is recovered. Under the plenary powers of equity, however, relief granted may be adopted to the exigencies of the case. Sinclair Oil & Gas Company v. Bishop, 441 P.2d 436, 447 (Okl.1968). It is the peculiar genius of equity that judgment be fashioned in which full justice is done. "Equity delights to do justice, and that not by halves." Meredith v. Ramsdell, 384 P.2d 941, 945 (Colo.1963). Because of the flagrant actions of Cameron et al. and the unjust enrichment which would inure to appellees thereby if the trust were to be imposed with payment of attorney fees, equity and justice demand that appellees be ordered to pay attorney fees to appellant's lawyers in an amount which is to be determined by the trial court.

Affirmed in part, reversed in part and remanded with directions.

LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

DAVISON, C. J., and IRWIN and BERRY, JJ., concur in part and dissent in part.

### ON REHEARING

SIMMS, Justice.

Rehearing is hereby Granted for the limited purpose of striking all of the language in the original opinion, beginning at line 35 from bottom of page 622, and all of page 622, and the following is substituted therefor:

"There is ample authority for allowing attorneys fees to be paid from the fund which is recovered. State, ex rel. Board of County Commissioners of Harmon County v. Oklahoma Tax Commission, 194 Okl. 359, 151 P.2d 797 (1944).

■ That portion of this Court's judgment requiring Appellee to pay Appellant's attorneys fees is reversed and remanded with directions to pay Appellant's attorneys fees out of the lease payment or payments.

Affirmed in part, reversed in part and remanded with directions.

The Petition for Re-Hearing is in all other respects denied."

HODGES, LAVENDER, BARNES and DOOLIN, JJ., concur.

DAVISON, C. J., and IRWIN and BERRY, JJ., dissent.