FAIRBANKS, MORSE & CO. v. MARGARET S. WALKER
*et al., as Partners, etc.*

No. 15,264.   (92 Pac. 1129.)

SYLLABUS BY THE COURT.

1. CONTRACTS — *Sale of Personalty — Rescission.* An oil-tank for the storage of oil, as between buyer and seller, is a chattel, and the contract of purchase may be rescinded by the purchaser for failure to furnish one of the kind and quality agreed upon, the same as in the sale of other chattels.

2. ———— *Restoring the Status Quo.* In such a case the right to rescind, when otherwise existing, will not be denied on

the ground that the parties cannot be placed *in statu quo*, when the purchaser has not received and accepted the tank and the seller has parted with nothing by reason of the sale except the waste of material incident to putting the previously manufactured parts together and the cost of labor in so doing.

3. —— *Same.* The rule that upon the rescission of a contract for the purchase of a chattel the parties must be placed *in statu quo* does not require, in all cases, that an absolute and literal restoration of the parties to their former condition shall be had, but it will be sufficient if such restoration be made as is reasonably possible, and such as the merits of the case demand.

Error from Neosho district court; LEANDER STILLWELL, judge. Opinion filed December 7, 1907. Affirmed.

*William C. Forsee,* and *J. S. Detwiler,* for plaintiff in error.

*B. F. Shinn,* and *J. L. Denison,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: This is an action to recover the value of an oil-tank furnished by Fairbanks, Morse & Co. to the defendants in error. Action was commenced before a justice of the peace, where the defendants recovered judgment, and plaintiff appealed to the district court of Neosho county. Judgment was again given in favor of the defendants, and the plaintiff brings the case here for review.

The plaintiff is located in Kansas City, Mo., and is engaged in the business of manufacturing and selling oil supplies and machinery. The defendants, at the time the transaction in controversy occurred, were engaged in the oil-producing business at Chanute, under the name of the Walker Oil Company. J. M. Glover was a traveling salesman for the plaintiff, and C. E. Derenberger was "field manager" for the de-

fendants.  On August 17, 1903, Glover took an order from Derenberger for an oil-tank, which reads:

*"Messrs. Fairbanks, Morse & Co.:*

"Please ship via frt. to Walker Oil Co., at Chanute, Kan.  Notify C. E. Derenberger.

"1 12 x 20' 2" cypress oil-tank, price $260.  Erected on our lease you to furnish bottom and deck, and make the tank hold oil.  Hoops—three 4" hoops on bottom balance 3" and one 1 2½" on top.  We will haul out the material.  Terms net 30 days from date of shipment, without any deduction for freight, express or exchange charges.  This order is subject to the approval of Fairbanks, Morse & Co., ——— the undersigned have examined the above order and the same is correct.

(Signed)   C. E. DERENBERGER."

This order was accepted, the material shipped, and the tank erected.  The tank was completed about September 16, 1903.

Oil-tanks are used for storing oil, and are worthless if they leak.  A tank that is water-tight may not hold oil.  Some of the witnesses testified that oil will escape through the staves of a tank if they are "sappy."  The tank in question never would hold water, and a number of its staves were "sappy."  The staves did not fit close together and water ran through the cracks between them.  The tank was never fit for the use intended, and was practically worthless as an oil-tank.

On October 12, 1903, plaintiff drew a draft on the defendants for the price of the tank, to which an answer was made as follows:

"CHANUTE, KAN., 10-14, 1903.

*"Fairbanks, Morse & Co., Kansas City:*

"GENTLEMEN—I will not oner your draft by no means against the Walker Oil Co., in the first place your bill is but $260, as I ordered the other goods of Glover to be delivered in not to exceed 6 days as I was at the time equipping, it was not sent for 3 weeks.  So it is your stuff not mine and when ever you put this tank up as my contract calls for I will decide to pay you and not before.    Yours respt

C. E. DERENBERGER."

After receipt of this letter the plaintiff made some further efforts to make the tank acceptable to the defendants, but did not succeed, and commenced this action June 25, 1904. The district court entered judgment in favor of the defendants, as follows:

"And now on this 23d day of November, 1905, came the above-named parties by their attorneys, and the court having had said cause under advisement, and being fully advised in the premises, does find for the said defendants and that the prayer of said petition be denied and that said defendants have and recover of said plaintiff their costs in their behalf expended, taxed to $98.85, hereof let execution issue. And it is further ordered that at any time within sixty days from this date the said plaintiff may take possession of the tank involved in this action and remove the same from the premises where it now is. Should plaintiff fail to remove the said tank in said time, then the defendant Margaret S. Walker can remove said tank from said premises (if she desires to do so), doing as little damage to said tank in removing as possible. Plaintiff to be notified by mail of the removal of said tank and the place to which it may be removed. In any event said tank to remain the property of plaintiff."

Several assignments of error have been presented, but they are all involved in one, and only that one need be considered. It is contended that the contract between the parties was one wherein the plaintiff agreed to furnish the materials and build an oil-tank upon the premises of the defendants, and not one for the sale of an oil-tank, and, therefore, should be classified as a building contract and not one for the sale of a chattel, in which case the defendants cannot refuse to accept the tank and avoid payment, even if it is defective and not according to the contract, but must resort to an action for damages.

It is also argued that the parties in this case cannot be placed *in statu quo* if the contract is rescinded, and under the doctrine which denies the right of rescission in such cases no recovery can be had. We do

not see any serious difficulty, however, in placing the parties to this action in practically the same situation they were before the contract was made. Indeed, this seems to have been successfully accomplished by the judgment of the district court.

It is insisted that the plaintiff cannot be placed *in statu quo* unless the tank and wasted material, together with the cost of labor expended in the construction of the tank, be returned. But such an application of the rule does not seem to be practicable or reasonable. The cases where this rule can be applied in such an absolute and unqualified sense are very rare. Where a tailor agrees to furnish the material and make a coat, if the garment when finished is so small that the person for whom it was made cannot wear it the purchaser may refuse to take it, and yet the tailor cannot be placed *in statu quo* under the rule here insisted upon, as the material would be practically destroyed for other purposes, and the labor thus expended lost. The same is true in every case where the seller manufactures the article sold. We understand the rule to be that the person who rescinds must always return all benefits received from the contract, and restore the *status quo,* not absolutely, but so far as possible or the merits demand. (24 A. & E. Encycl. of L. 620; 6 Pom. Eq. Jur., 3d ed., § 688; *Neblett v. Macfarland,* 92 U. S. 101, 23 L. Ed. 471; *Brown v. Norman,* 65 Miss. 369, 4 South. 293, 7 Am. St. Rep. 663; *Myrick v. Jacks,* 33 Ark. 425.)

As applied to this case, the plaintiff undertook to make on oil-tank that would hold oil and be suitable for the purpose of storing it. The defendants had no use for a tank that would not serve this purpose. The plaintiff fully understood the needs of the defendants in this respect and contracted with reference to this known situation. The tank, as erected, is defective in every respect; the materials are unsuitable and the workmanship unskilful. The plaintiff had abundant time in which to construct, repair and make the tank according to contract, but failed to do so. The tank,

when completed, and at all times thereafter, was worthless except as the materials of which it is constructed are valuable. It would be inequitable and unjust to compel the defendants to keep this tank at any price. They received nothing whatever of value from the contract and have nothing to return to the plaintiff. The situation is the direct result of the plaintiff's conduct; it has no reason to complain. The material shipped to Chanute is on the defendants' premises in a condition where it may still be properly denominated material, and can be removed and used for some purpose for which it is adapted without serious loss.

The plaintiff has cited in support of its contention the case of *Tower v. Pauly,* 51 Mo. App. 75. The facts of that case, however, differ so much from this that it has very little, if any, application. That was a case where a hot-air furnace was placed in a residence, and when completed it was paid for. Its capacity was not tested for more than a year after completion, and then, when found to be deficient and not equal to the warranty, the owner tendered it back, less the brick casing, which he used in the construction of another furnace, and brought suit to recover the money paid. The majority of the court held that he could not recover, first, because he waited too long; second, he did not tender back all that he received; and, third, the furnace was a structure when completed, built into a house, and could not be returned so as to place the parties *in statu quo,* and therefore the remedy was an action for damages and not a rescission of the contract. Judge Rombauer concurred in the first two propositions and dissented to the third. Judge Biggs dissented generally. We are not inclined, therefore, to regard that case as an authority here.

We conclude that the plaintiff sold a chattel— an oil-tank—to the defendants, which failed in every important particular to comply with the contract of purchase. The defendants, because of such failure, right-

fully refused to accept the tank. By such refusal the ownership of the property has never changed; it has at all times belonged to the plaintiff. We think the rights of the parties were correctly disposed of by the district court.

For more than twenty years this court has been reviewing the decisions of the eminent judge before whom this case was tried, and it has noticed with satisfaction the vigilant care and patient industry given by him to the discharge of his official duties. His thorough knowledge of legal principles and his clear perception of natural justice made him peculiarly fitted for judicial service, and contributed in a large measure to the success which gave him prominence as a jurist and caused him to be generally recognized as an able and impartial judge. In view of his recent voluntary retirement from the bench by resignation, thereby severing his long-continued official relations with this court, we deem it proper to make this reference thereto.

The judgment is affirmed.