No. 23,661.

JAMES E. ELY, *Appellee*, v. DANIEL JOSLIN, *Appellant*.

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Sale of Land—Good Title Implied.* In a contract for the sale of land there is an implication that the vendor has a good title and a right to convey unless such implication is expressly excluded by the terms of the contract.

2. SAME—*Sale of Land—Imperfect Abstract—Investigation by Purchaser—No Unreasonable Delay.* Although an abstract of title is not specifically required by the contract, if parties proceed on the theory that the vendor shall furnish evidence that he has a good title and a right to convey, and he does furnish an abstract as evidence of his title which shows defects in the title and which requires time for investigation by the purchaser and for the completion of the record of title, the vendor is not in a position to claim that the purchaser is in default while making such investigation if an unreasonable time is not taken for that purpose.

3. SAME—*Sale of Land—Covenants of General Warranty Implied.* The rule that "in the absence of express stipulation covering the subject, a deed with the usual covenants of warranty is implied" (*Dewey v. Hines*, 87 Kan. 834, 126 Pac. 1093), is followed and applied.

4. SAME—*Sale of Land—Place of Payment of Price Designated in Contract.* Under the negotiations and acts of the parties it is held that they fixed the place of payment for the land and the closing of the transaction at a depository bank, and not at the residence of the vendor.

5. SAME—*Sale of Land—Useless Tender of Price Not Required.* In order to put the vendor in default and warrant the commencement of an action for specific performance, a formal tender of the balance of the purchase price is not required where the vendor's acts amount to a repudiation of the contract and show that a tender would be unavailing.

Appeal from Kearny district court; CHARLES E. VANCE, judge. Opinion filed July 8, 1922. Affirmed.

*R. W. Hoskinson,* and *Robert S. Field,* both of Garden City, for the appellant.

*William Easton Hutchison,* and *C. R. Hope,* both of Garden City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment against the defendant adjudging the specific performance of a contract he made with the plaintiff for the sale of a tract of land.

The defendant, who owned land in Kearny county, Kansas, resided in Anamosa, Iowa, and he contracted to sell it to the plaintiff, who resided in Garden City, Kan. The contract was based on the following correspondence. In a letter dated June 17, 1919, plaintiff wrote:

"Would be pleased to have your bottom dollar price net to you and best terms on which you would sell the N. W. quarter of 3-21-35, Kearny County, Kans.," etc.

On June 18, 1919, defendant replied:

"I have had several cash offers of $800.00 for this piece of land, but will take $1000.00 cash. This is the lowest possible price."

On June 26, 1919, plaintiff responded, saying:

"Your letter offering me your N. W. 3-21-35, Kearny County, Kans., for $1000.00 cash, received. I accept your offer.   (Signed)

"P. S. I am enclosing you my personal check for $50.00 which you can receive if you wish as a first payment on the land. It would please me to have the deal closed through the Peoples State Bank of Garden City, Kans."

The fifty-dollar check was received and retained by the defendant, and on June 30, 1919, he executed a deed to the land and forwarded it to the Peoples State Bank in Garden City, Kan., as he had been requested to do. That bank called the plaintiff's attention to the receipt of the papers, and as there was no abstract among them he wrote defendant on July 2, 1919, asking defendant to forward an abstract showing that he owned the land and had the right to convey it. Having received no reply to that letter plaintiff wrote a second one on July 10, urging the defendant to send the abstract. In response to this letter a banker of Anamosa, Iowa, acting for the defendant, forwarded the abstract to the Peoples States Bank and in the letter stated that defendant is a farmer and did not understand that an abstract was necessary to close the deal. The abstract was handed to plaintiff, and discovering that it had not been brought down to date he had that done and afterwards placed it in the hands of an examiner, who found defects in the record of the title, one of which was that it failed to show a patent from the United States. On July 22, 1919, the Iowa banker, still acting for defendant, wrote to the Garden City bank in regard to closing the transaction, saying that it was supposed to be a cash deal, and that the defendant might decide to withdraw the land if he did not get his money at once. In reply the depository bank in Garden City wrote that the transaction was going forward as rapidly as possible, that plaintiff had to have the abstract brought down to date, had just got it back and handed it to his attorney for examination. On July 25, 1919, plaintiff wrote to defendant to the same effect, calling attention to the absence of the patent and asking defendant to hunt for it among his papers and let him know as quickly as possible if it could be found. It was not found, and after hearing from defendant, plaintiff on August 17, 1919, wrote again saying he had sent to Washington for the patent and hoped to receive it and complete the transaction in a few days. On August 7, 1919, the Iowa banker sent the following letter to the Peoples State Bank:

"Return at once the collection, number 60366, Ely sent you June 30th, for $950.00. We have written you once before to insist on immediate payment, and now we want this returned. We are registering this for a purpose and do not want this matter delayed. There has been two months given on a cash deal and now Mr. Joslin has a chance to sell and get his money at once."

In reply to this request the Peoples State Bank responded that if they would send the postage and a small charge for attending to the

Ely v. Joslin.

business, the papers would be returned. In that letter they added that plaintiff had done all he could to hurry up the transaction, that he had to obtain a copy of the patent and make corrections in the abstract, something which defendant should have done, and further, that the instrument that had been forwarded was a special instead of a general-warranty deed. Plaintiff discovered about this time that the instrument which had been sent and held by the bank did not contain covenants of general warranty. The Iowa banker wrote in reply that the defendant did not agree to clear the title of defects, that plaintiff was supposed to have the money ready as soon as the deed was forwarded, and that no reason was seen for the objections made to the abstract of title unless it was the lack of a patent, and that patents could be gotten any time for forty cents. After the return of the papers, on August 12, 1919, the present action was commenced.

The facts stated, about which there is no substantial dispute, show a breach of the contract by the defendant. It devolved on the defendant to hold and give plaintiff a good title to the land which he contracted to convey. In every contract for the sale of land there is an implied warranty by the vendor that he has a good title unless such warranty be expressly excluded by the terms of the contract. (*Durham v. Hadley,* 47 Kan. 73, 27 Pac. 105.) Under our system of registration, the source and validity of title are shown by the records. According to general usage, evidence of title is an abstract of the record and ordinarily is furnished by the vendor. While the contract contained no express requirement that an abstract be furnished, the defendant evidently thought it incumbent upon him under the contract to furnish evidence of the condition of his title and of his right to convey, as he did send an abstract to the depository as evidence of his title. That was his interpretation of the contract and of his obligation under it. After acquiescing in the theory that he was required to furnish evidence of a right to convey a good title and his action in attempting to comply with the requirement, it is too late to make the contention that he was under no obligation to furnish evidence of his right to convey. The abstract he did furnish showed a gap in the title, and some other defects. It had not been brought down to date, and the record failed to show a patent from the United States. Upon receipt of the abstract plaintiff proceeded at once to have it completed so as to show the condi-

41—111 KAN.

tion of the title, a task which defendant had assumed to perform, and as soon as it was completed plaintiff handed it to an attorney for examination. The investigation as to the title was conducted with reasonable dispatch and some defects were found. Plaintiff made prompt inquiry of defendant as to the missing patent, and as defendant could not find it plaintiff procured a copy of the patent, and in that way completed the evidence of title. There were several weeks of delay, but, as will be seen, the deed was not sent to the bank until June 30, and the abstract not until the middle of July. The delay, it is disclosed, was occasioned by the failure of defendant to make the records show that he had the title which he contracted to convey. While it was to be what is called a cash sale there is nothing in the evidence tending to show unnecessary delay by the plaintiff, but on the contrary it does show that the delay resulted from the default of the defendant to do that which he attempted to do, that is, to show that he had a marketable title to the land.

He also failed in his duty in respect to the deed executed and sent to the depository. When plaintiff came to inspect it, it proved to be a deed of special warranty. While the form of the deed to be executed was not stated in the contract, one of general warranty was required to be given. It has been decided that "in the absence of express stipulation covering the subject a deed with the usual covenants of warranty is implied." (*Dewey v. Hines,* 87 Kan. 834, 126 Pac. 1093.)

There is a contention that defendant was not in default because the place of payment was at the residence of defendant in Iowa, and tender of payment had not been made at that place, but by an arrangement between the parties payment was to be made, and the transaction closed at the Garden City bank. In his acceptance of defendant's offer, plaintiff suggested that bank as the place of payment, and defendant accepted the suggestion when he forwarded the papers to that bank with instructions to deliver the deed when the balance of the consideration was paid.

There is another contention that the action was brought by plaintiff before there was a default; that defendant was not placed in default until the money was either sent to the defendant at his residence in Iowa or tendered to the Garden City bank, and that neither was done. The action was not brought until the withdrawal letter of the defendant had been received by the Garden City bank. The

purport of the letter was a refusal of the defendant to go farther in the transaction. That purpose was made plain in the statement, "There has been two months given on a cash deal, and now Mr. Joslin has a chance to sell and get his money at once." This was not only a recall of the deed but a statement that it was his intention to dispose of the property to another. It amounted to a repudiation of the contract by defendant and at a time when the plaintiff was not in default. Under the circumstances a tender of the money then would have been useless, as the defendant, by words and conduct, had indicated that he was unwilling to perform. It has been decided that "where one party by his acts renders a tender useless and foolish, the other party is not required to make the tender." (*Chinn v. Bretches,* 42 Kan. 316, syl. ¶ 2, 22 Pac., 426. See, also, *Railroad Co. v. Comm'rs of Chase Co.,* 49 Kan. 399, 30 Pac. 456; *Piazzek v. Harman,* 79 Kan. 855, 98 Pac. 771; *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270.)

The claim that plaintiff had not acted in good faith is not supported by the evidence, and the judgment of the trial court implies that it was found to be without merit. The excuses given for defendant's default are deemed to be insufficient, and the conclusion of the court that plaintiff was entitled to specific performance must be upheld.

Judgment affirmed.