No. 32,211

GEORGE W. WELLS and MARY C. WELLS, *Appellees*, v. C. F. HIGGINS and MINNIE B. HIGGINS, *Appellants*.

(58 P. 2d 1097)

Opinion filed July 3, 1936.

*W. P. Waggener, J. M. Challis, O. P. May, B. P. Waggener,* all of Atchison, and *George F. Kapp,* of Long Beach, Cal., for the appellants.

*Ralph U. Pfouts* and *Maurice P. O'Keefe,* both of Atchison, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This suit was brought to cancel and set aside a deed to real estate in Atchison county, Kansas, quiet the title in plaintiffs and to cancel and set aside a bill of sale conveying personalty located upon and used in connection with that real estate. The deed and bill of sale were parts of the same contract. Plaintiffs prevailed, and defendants, C. F. Higgins and Minnie B. Higgins, his wife, appeal.

Defendants traded the Naples Hotel at Long Beach, Cal., for plaintiffs' property—Prospect Park Sanitarium—in Atchison county, Kansas. The contract for the exchange was executed in California. Plaintiffs were both of advanced age. George W. Wells was eighty-three years of age, and Mary C. Wells, his wife, was seventy-eight. The basis of plaintiffs' action was alleged fraud. There were several defendants, but we will refer to C. F. and Minnie B. Higgins, with whom plaintiffs contracted, as the defendants. The trial court made findings of fact and conclusions of law. The findings of fact are:

"1. The court finds that on or about August 22, 1931, the plaintiffs made, executed and delivered unto the defendants, C. F. Higgins and Minnie B. Higgins, a warranty deed covering the following-described real estate, to wit: The south fifty-four (54) acres of the east half of the northeast quarter of section eleven (11), township six (6), range twenty (20), in Atchison county, state of Kansas, and a bill of sale, in writing, covering certain personal property located in and about the above-described real estate, which consisted of furniture, furnishings, kitchen equipment and other equipment, harvested and growing crops, farming implements, certain livestock, etc., free and clear of all liens and encumbrances.

"That on or about the same time, and as a part of the same transaction, the defendants, C. F. Higgins and Minnie B. Higgins, did make, execute and deliver unto the plaintiffs a certain deed covering the following-described real estate in California, to wit: Lots three (3) and four (4), and five (5), block ten (10), tract No. 500, in the city of Long Beach, Los Angeles county, California, book 14, page 186, of maps, known as the Naples Hotel, subject to a trust deed in favor of the Mutual Building and Loan Association securing an unpaid balance of principal of $26,600, and the defendants did at the same time transfer unto the plaintiffs the equipments and furnishings in said hotel, subject to a mortgage or encumbrance to secure a debt of $4,950, which said encumbrances were to be paid as follows: On said hotel at the rate of $390 per month, on the hotel furnishings at the rate of $200 per month. That hereafter the Atchison county property will be referred to as Prospect Park Sanitarium, and the California property will be referred to as the Naples Hotel.

"That the plaintiffs actually took possession of the Naples Hotel property about the 10th of October, 1931; that the defendants Higgins took possession of the Prospect Park Sanitarium a few days before that date.

"Prior to the execution of the conveyances aforesaid plaintiffs and defendants Higgins, in the city of Long Beach, Cal., and at a branch of the Bank of Italy, entered into certain escrow agreements, which were amended in certain minor respects from time to time, which escrow agreements are attached to the depositions on file herein as exhibit C, and said escrow agreements concern the transfer of said properties.

"2. At the time this litigation was instituted by the plaintiffs, Virgil Morrison of Atchison, Kan., claimed some interest in the Prospect Park Sanitarium, under some contract claimed to have been made by him with the defendants Higgins, and said Virgil Morrison was made a party to this action, but thereafter said Morrison dismissed his answer and cross petition herein and withdrew from the litigation and thereafter made no further claim in the matter, and does not now make any claim that he had any rights to or interest in the Prospect Park Sanitarium.

"3. The court finds that the defendant, C. F. Higgins, made and caused to be made the following false and fraudulent representations and statements to the plaintiffs which were by the defendant, C. F. Higgins, known to be false when made and which were made for the purpose of deceiving the plaintiffs who were deceived thereby and who relied thereon, to wit:

"A. That with the exception of two dull months in the year the rooms in the Naples Hotel had been averaging fifty percent to three fourths full or rented, and that on week ends all of the rooms were rented and people had to be turned away, when in truth and in fact said rooms had not been averaging fifty percent to three fourths full, nor on week ends were all of the rooms rented during the time the hotel had been operated by the defendants Higgins (which was for a period of approximately seventeen months prior to the exchange of the properties).

"B. That the original cost of the furniture in the Naples Hotel, exclusive of the dining room and kitchen furniture and equipment, was $22,500, when in truth and in fact same cost approximately $10,500.

"C. That the said hotel cost defendants Higgins $60,000, when in truth and in fact it cost them much less than that.

"D. That at the time of the exchange and prior thereto, said Naples Hotel was self-sustaining, when in truth and in fact it was being operated at a loss.

"E. That said C. F. Higgins could and would within six months from the time of the exchange of said properties sell the Naples Hotel for the plaintiffs for the sum of $85,000, which sum was its true value, when in truth and in fact said C. F. Higgins had no intention of so doing, knew that the same could not be done and did not do so, and knew that said hotel was worth a great deal less than said sum at said time.

"F. That he had a tenant that would rent said hotel for the sum of $600 per month, and that the hotel could be rented for said sum, when in truth and in fact he had no tenant who would rent said hotel and knew that said hotel could not be rented for any sum, due to the fact that it was then losing money.

"G. That said hotel was paying its way, that is, was making enough to pay the mortgages and operating costs, when in truth and in fact said hotel was not paying its way, but was losing money.

"4. That each and all of the foregoing representations and statements as set forth in finding three were made by the defendant, C. F. Higgins, with the purpose and intent of deceiving the plaintiffs and defrauding them, and that the plaintiffs believed said statements and relied thereon, and made said exchange of properties depending and relying on said statements, and believing that the same were true and that the plaintiffs would not have made said exchange if said statements had not been made and if they had not believed them to have been true.

"5. That the plaintiffs are people of advanced age: George W. Wells is eighty-three years of age, and Mary C. Wells is seventy-eight years of age; that they had had little experience in land values or business, outside of conducting the Prospect Park Sanitarium, and were unusually credulous people; they relied upon the statements and representations made by the defendant, C. F. Higgins, and so stated to him at the time of making of the escrow agreements aforesaid, and when they talked with the defendant, C. F. Higgins, at different times before the making of the escrow agreement, and at the time of the making thereof they stated to him that they were not familiar with the values of California real estate and had no knowledge of the hotel business, and that they were depending and relying entirely upon his statements and representations made to them as aforesaid. It is not claimed by the defendants in their pleadings, or otherwise, that the plaintiffs were themselves guilty of any fraud or misrepresentations.

"6. That the plaintiffs went into the possession of the Naples Hotel property on or about the 10th day of October, 1931, and continued in the possession thereof until on or about the 1st day of July, 1932. On or about the 5th day of May, 1932, while in the possession of the Naples Hotel property, the plaintiffs caused to be served on the defendants, C. F. Higgins and Minnie B. Higgins, a written notice of rescission and offer to restore and tender back, a copy of which being attached to the deposition herein as exhibit 1.

"7. That between October 10, 1931, and the date of the serving of the notice of rescission aforesaid, the defendant, C. F. Higgins, by his actions and

statements lulled the plaintiffs into a sense of false security by calling upon them at said Naples Hotel property and offering excuses and justifications for the lack of business which they were experiencing. That at a time approximately ten days or two weeks after the plaintiffs took possession of the Naples Hotel property, the defendant, C. F. Higgins, called upon them and advised them that they were experiencing one of the dull months of the season, of which there were two as he claimed, and that it was in between seasons; that summer visitors had gone home to put their children in school, and that the winter season had not yet started, and then asked the plaintiffs to continue to operate said hotel, that better business could be expected. That at another and later time, defendant, C. F. Higgins, called upon the plaintiffs at said Naples Hotel and stated to them that the reason business was not as he had claimed during their negotiation was because the weather was very unusual for the time of the year, that the weather was unseasonably cool for that part of California, which fact had gotten into the newspapers and was delaying and retarding the winter business, but that for plaintiffs to continue to operate said hotel and when the weather became normal the winter tourists and guests would begin to arrive. That on another and later occasion which was between four and five months after the plaintiffs took possession of said Naples Hotel property, the defendant, C. F. Higgins, again called on them and requested them to continue to operate said hotel, saying that he and the agent Rose would dispose of it as had been agreed, and that thereafter the agent Rose called upon the plaintiffs at said hotel, and sought to interest them in certain exchanges of other property for the same, one of which plaintiffs consented to, but the other parties did not agree, which negotiations consumed some time. That the above statements were false and were made to the plaintiffs from time to time during the period last above referred to and were made for the purpose of deceiving the plaintiffs, and plaintiffs believed them to be true and plaintiffs did not become cognizant of the falsity of said statements or of the statements which the court finds to have been made in finding No. 3, until on or about the time notice to rescind was served. That the false statements found to have been made by defendant, C. F. Higgins, in this finding of fact were made in the execution and carrying out of his original plan and design to defraud the plaintiffs. That if there was any laches on the part of the plaintiffs in attempting to rescind said contract of exchange because of the fraud of defendants Higgins, same was waived by the defendants Higgins by the conduct of said C. F. Higgins as aforesaid; that said C. F. Higgins specifically requested the plaintiffs to continue with the operation of the hotel as hereinbefore found.

"8. The court further finds that at no time would the defendants, C. F. Higgins and Minnie B. Higgins, have consented to a rescission and a mutual restoration as between the parties one to the other, and that the defendants Higgins made no objection to the form or substance of the notice to rescind, which was served upon them, and that by the serving of said notice they were advised that plaintiffs considered that they had been defrauded and desired a mutual rescission, which the defendants Higgins would not do, and would not have entertained. That after the service of the notice to rescind, another notice was served upon the defendants, C. F. Higgins and Minnie B. Higgins,

by the plaintiffs, which is attached to the depositions as exhibit 2, which notice advised them that the mortgage upon the furnishings was being foreclosed and that the plaintiffs could not protect the same and requested defendants to do so, which they declined to do, and that notice of rescission was and would have been in all respects unavailing herein.

"9. The court further finds that at the time of the filing of the original petition herein, plaintiffs were still in possession of the Naples Hotel property, and that the filing of said petition constituted notice of rescission, and that the defendants Higgins, by the filing of their answer herein, and their entire conduct in connection with this matter, make the fact clear that any notice of rescission would have been unavailing herein.

"10. The court further finds that the laws of the state of California, as pleaded by the plaintiffs herein with respect to notice of rescission, are applicable; that under such laws the notice served by the plaintiffs was in all respects sufficient.

"11. The court further finds that under the general law and under the law of Kansas sufficient and proper notice of rescission was given and was given in time and further that by the conduct of the defendants Higgins any notice to rescind which might have been given at any time after the defendants entered into the possession of the Prospect Park Sanitarium, would have been unavailing and useless, even if said notice had not demanded damages, and that said defendants Higgins would not have rescinded said contract and exchange of properties under any notice of rescission that might have been given them.

"12. Defendants by their actions and conduct have waived any defect or lack of sufficiency in the notice of rescission given herein and have waived any objection to the time when same was given and are not in any position to assert that the plaintiffs are guilty of laches in the giving of notice of rescission.

"13. On May 18, 1932, which was eleven days after defendant, C. F. Higgins, had been served with notice of rescission, the defendants Higgins made, executed and delivered to Charles Richard Johnson and Anna Belle Johnson, who are relatives of the defendants Higgins, and who are defendants herein, a deed to the Prospect Park Sanitarium, which deed was recorded in the office of the register of deeds of Atchison county, Kansas, on May 18, 1932, the consideration expressed in said deed being the sum of ten dollars. On the trial of this case it was admitted by counsel for the defendants that said deed to said Johnsons was without consideration and was and is void.

"14. The court finds that during the time that the plaintiffs were operating the Naples Hotel, they placed their daughter, Mrs. H. K. DeLong, in charge thereof, and that she made every reasonable effort to make said hotel pay; that she advertised by means of radio, by mailing lists, personal solicitation and otherwise, and that she properly conducted said hotel, but that the hotel did not pay, notwithstanding her efforts.

"15. The court further finds that the plaintiffs were unable to continue in possession of said property except for a short time after the service of the first notice to rescind herein; that the building was being foreclosed; that the furniture was being taken under the chattel mortgage, and that for the purpose

of preserving such furniture as was not covered by said chattel mortgage, which is shown by exhibits D and E attached to the deposition on file herein, plaintiffs caused same to be sold at public sale for the sum of $600, and did deposit said sum in California where same remains for the benefit of the defendants Higgins; that it was necessary and proper to preserve said property, but plaintiffs were unable financially to pay the expense of moving and storing the same. That said property consisted of mattresses, rugs, electric refrigeration, chairs, tables and other property. That there was danger of the same being destroyed as follows: The mattresses and rugs by rats, dirt and dust, and all of the property by theft and pilferage. That said property was fairly sold and plaintiffs did the best they could to preserve and protect the same. That the defendants Higgins paid no attention thereto, and are not now in a position to complain about what was done in that regard.

"16. A receiver was appointed in this case for the purpose of retaining the profits arising from the operation of the Prospect Park Sanitarium pending this litigation, and at the time of the trial of this action the receiver had in his possession the sum of $2,195.73. After the expenses of the receivership are paid the plaintiffs are entitled to said sum, plus any additional profit that may have accrued from the operation of the sanitarium since the trial of this action."

CONCLUSION OF LAW

"That the defendants Higgins were guilty of fraud and misrepresentations, which were relied upon by the plaintiffs, and which entitled the plaintiffs to a rescission and a cancellation of the deed which they made to the Prospect Park Sanitarium and have the bill of sale to the personal property therein set aside and canceled. That the defendants Higgins, through their actions and false statements, are not in a position to assert that the plaintiffs were guilty of laches in the giving of notice of rescission, or that the notice that was given was not sufficient or was defective. The notice of rescission was given in time to entitle the plaintiff to a rescission and cancellation of the deed and the bill of sale which they gave to the defendants, Higgins; that plaintiff's title to the Prospect Park Sanitarium should be quieted as against all of the defendants; that the plaintiffs are entitled to the funds in the hands of the receiver, less the expense of the receivership, and that the defendants should pay the costs and judgment should be rendered in accordance with these findings of fact and conclusions of law."

Defendants contend this was a suit for rescission of a contract, possession of real estate and required an accounting. They insist it required a judgment in personam, and service having been had by publication the trial court had no jurisdiction. Jurisdiction was challenged by special appearance and motion to quash the service. The motion was sustained. The original petition also contained a request for damages, but the latter was omitted from the amended petition and new service by publication was had on the amended petition. Plaintiffs offered to account for all receipts and disburse-

ments in connection with the operation of defendants' hotel property, but did not demand or request an accounting. Defendants did not ask an accounting and the trial court ordered none. The essence of the relief sought by plaintiffs was to have their right in the property determined, the deed and bill of sale set aside and the title to the real estate quieted in them. They asked for no personal judgment compelling defendants to do or undo anything. True, they also asked for possession. If the deed was set aside and the title quieted in plaintiffs, defendants' right to possession legally terminated with such decree, as under the circumstances in this case defendants had no right to possession except by virtue of the contract and deed. Their right to possession rested solely on their title and passed with the loss of it. The purpose of the action, as stated, was not to compel defendants to do something, but was to obtain a decree which would wipe out the effects of the alleged swindle by destroying the legal consequences of the conveyance which affected the record title to the property. In other words, the decree sought acted upon the property and not upon the person of the defendants. The gist of the action was, therefore, a determination of plaintiffs' interest in the property and the recovery of that interest.

In support of appellants' contention the action was in personam as well as in rem, we are referred to *Neal v. Reynolds,* 38 Kan. 432, 16 Pac. 785; *Zimmerman v. Barnes,* 56 Kan. 419, 42 Pac. 764; *Fuller v. Horner,* 69 Kan. 467, 77 Pac. 88; *Zane v. Vawter,* 102 Kan. 887, 172 Pac. 37; *Kihn v. Citizens State Bank,* 122 Kan. 479, 252 Pac. 232.

Analysis of those decisions, keeping in mind no judgment was asked in the instant case which operated in personam, will disclose they are not controlling here. R. S. 60-501 provides:

"Actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next section:

"*First*—For the recovery of real property, or of any estate or interest therein, or for the determination in any form of any such right or interest, or to bar any defendant therefrom."

This action was properly brought in Atchison county, where the land was situated, and the court had jurisdiction to decree the relief sought. (*Randall v. Ross,* 94 Kan. 708, 147 Pac. 72; *Caldwell v. Newton,* 99 Kan. 846, 163 Pac. 163; *Patterson v. Mitchell,* 135 Kan. 585, 11 P. 2d 1022.)

In the Randall case this court quoted with approval 40 Cyc. 63:

" 'The real question in all these cases is as to the true nature of the action: Does it turn on the personal obligation or on the title? Does it take immediate effect in personam or upon the interest in the land? And the test here is found, not in any formal characteristic, but in the substantial nature of the action as shown in the pleading, and the kind of judgment which may be rendered.' " (p. 716.)

In the Patterson case this court said:

"Plaintiffs in the mandamus proceeding contend that the pleadings disclosed an actual controversy respecting the title to the real property situated in Montgomery county, and argue that an action for the determination of the rights of the parties to that real property, *whether by ejectment, to quiet title, or in some other form,* must be brought in the county where the land is situated, and in support of this contention cite our statute (R. S. 60-501), the pertinent portion of which reads: (Statute quoted above).

"In a long line of decisions this court has consistently held in conformity with this statute that such actions must be brought in the county in which the real property is situated. (*Neal v. Reynolds,* 38 Kan. 432, 16 Pac. 785; *Jones v. Investment Co.,* 79 Kan. 477, 99 Pac. 1129; *Martin v. Battey,* 87 Kan. 582, 125 Pac. 88; *Randall v. Ross,* 94 Kan. 708, 147 Pac. 42; *Moore v. Hopkins,* 112 Kan. 345, 210 Pac. 1095; *Black v. Black,* 131 Kan. 154, 289 Pac. 480.)" (Italics inserted.) (p. 589.)

With regard to notice of rescission defendants contend the laws of Kansas, and not the laws of California, control. The contract was executed and deposited in escrow in the state of California. The deeds were executed upon the terms of that contract, which contract, it is alleged, was procured through fraud. The procedure to rescind that contract was governed by the laws of the forum in which it was executed. Those laws were pleaded by plaintiff and properly introduced in evidence. The trial court found defendants had sufficient notice of rescission under both the Kansas and California law. We discover no error in that finding. Furthermore, the trial court found the entire conduct of defendants was such as to make it clear that any notice of rescission would have been unavailing. The finding is supported by substantial evidence.

In their reply brief defendants contend the rescission sought is of the deed and bill of sale, and not of the agreement, as the agreement had spent its force upon the execution of the conveyances. We do not see how this contention helps defendants' position. If notice of rescission of the deed and bill of sale to Kansas property was necessary instead of notice to rescind the agreement, then defendants had such notice from the filing of the action itself. It was filed on June 15, 1932, while plaintiffs were still in possession of the hotel property. Furthermore, the continuous fraudulent

intent and purpose of defendants was such as to make any notice to rescind useless, whether the notice pertained to the agreement or the conveyances. Under those circumstances, if some irregularity in fact inhered in the notice, such fact was of little or no importance.

Defendants next contend plaintiffs' sale, after notice of rescission, of certain personalty in the hotel was inconsistent with rescission. The sale was not made with the view of abiding by the contract or conveyances, but for the purpose of reducing the loss and only after defendants refused to protect the property. The hotel had been mortgaged and much of the furniture and equipment was about to be repossessed under a sales contract. These encumbrances existed when the exchange of properties was made. The mortgage on the hotel was also being foreclosed. Plaintiffs expressly notified defendants of these facts. Defendants did nothing to preserve or protect the personalty which was not covered by the mortgage and which remained in the hotel, much of which was subject to theft and destruction. To protect it from loss it was fairly sold at public auction for the sum of $600. The sale was thus made in good faith and for the purpose of avoiding further loss. Under such and similar circumstances, it has been held the former rescission was not thereby waived. (*Tarkington et al. v. Purvis,* 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607; *Basye v. Refining Co.,* 79 Kan. 755, 101 Pac. 658.) In the Tarkington case it was said:

"Where subsequent acts are relied on as a defense in a case where fraud is clearly established, it is said the act must stand upon the clearest evidence, and must evince a purpose to waive or forgive the fraud, and must amount to a clear election not to rescind. If what is done is merely for the purpose of saving the plaintiff from further loss, without any purpose to give up whatever right he may have either at law or in equity to rescind, the right of rescission will not be affected." (p. 186.)

In the Basye case it was held:

"An action for the rescission of the purchase of an oil lease on the ground of fraud is not necessarily defeated by the fact that the plaintiff has used up a quantity of the oil which he has received from the property. Although by his own act he has rendered impossible the restoration in specie of all that he has received in the transaction, he may be granted relief upon payment of its value when substantial justice will be thereby promoted." (Syl.)

Nor was the fraud, under the circumstances, thereby condoned or waived. (*Circle v. Potter,* 83 Kan. 363, 111 Pac. 479; *Oil & Gas Co. v. Overfield,* 113 Kan. 294, 300, 214 Pac. 809; *Harnden v. Hadfield,* 113 Kan. 525, 215 Pac. 441.)

In the Circle case it was held:

"Before a contracting party deceived and defrauded by another should be deemed to have condoned or waived the fraud by some subsequent action it must appear that he acted with full knowledge of the deception, *and with the intention to abide by the contract notwithstanding the fraud practiced upon him.*" (Italics inserted.) (Syl. ¶ 3.)

In the instant case the facts clearly disclose there was no intention of abiding by the contract nor to condone the fraud.

Defendants contend no proper tender was made for the return of the proceeds of this sale. Plaintiffs alleged the proceeds were on deposit in California and were being held and retained for the benefit of defendants. Of course, a much better practice would have been to have deposited the proceeds in court for defendants' benefit.

In view of the fact, however, that defendants refused to consider any rescission, a proper tender of the proceeds was of small consequence. Defendants by their conduct had clearly indicated their unwillingness to perform their duty by consenting to undo the effects of their fraudulent conduct. In *Ely v. Joslin,* 111 Kan. 638, 208 Pac. 628, it was said:

"Under the circumstances a tender of the money then would have been useless, as the defendant, by words and conduct, had indicated that he was unwilling to perform. It has been decided that 'where one party by his acts renders a tender useless and foolish, the other party is not required to make the tender.' (*Chinn v. Bretches,* 42 Kan. 316, Syl. ¶ 2, 22 Pac. 426. See, also, *Railroad Co. v. Comm'rs of Chase Co.,* 49 Kan. 399, 30 Pac. 456; *Piazzek v. Harman,* 79 Kan. 855, 98 Pac. 771; *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270.)" (p. 643.)

In 3 Black on Rescission and Cancellation the rule is stated thus:

"Moreover, any insufficiency in a tender of rescission and return will be waived by an absolute refusal of the other party to entertain the proposal at all." (§ 623.)

Defendants further contend plaintiffs did not prove fraud. They therefore object to most of the findings of fact. We have carefully examined the evidence. Testimony relative to fraudulent representations was highly conflicting. It appears the trial court believed little of defendants' evidence. Plaintiffs' evidence of fraud was strong and convincing and provided ample basis for cancellation of the conveyances.

Defendants also insist if fraud was established, plaintiffs cannot prevail for the reason they did not rescind promptly, but, on the

contrary, waived and ratified the fraud by their own conduct both prior and subsequent to notice of rescission. The exchange agreement was executed August 22, 1931. Defendants took possession on October 19, 1931. They remained in possession until about July 1, 1932. The formal notice of rescission was served May 5, 1932, while plaintiffs were still in possession of the Naples Hotel. They did not find the hotel doing the business defendants had represented it to be doing. They complained about it, but defendants continued to lull them into a sense of false security and persuaded them to continue the operation of the hotel. Defendants, themselves, fraudulently induced the delay of an earlier rescission. Numerous decisions of this and other courts are cited in which the necessity for prompt rescission has been announced. This is the general rule but it cannot apply where defendants have themselves fraudulently induced the delay. It was for that reason the trial court found, if there was unnecessary delay in rescission, defendants had waived it by their own conduct.

Defendants further contend that plaintiffs did not place them *in statu quo* and it was then impossible to do so. The delay in rescission, as stated, was occasioned by defendants' conduct. The change in defendants' status, such as it was, occurred during this period. Notice of rescission was served on May 5, 1932. On May 18, 1932, defendants conveyed the Atchison property to relatives without consideration. Defendants had also entered into a contract with another party for the sale of the Atchison property. Suit was filed against defendants on that contract but it was later dismissed. The grantees under that deed are claiming no interest in the Atchison property.

As to the proceeds from the sale of personalty in the sum of $600, previously mentioned, a lien is hereby adjudged in that amount on the real estate of plaintiffs described in finding number one, designated as Prospect Park Sanitarium, which, amount is hereby made due and payable in sixty days from date of this judgment, namely, July 3, 1936.

These old people, in child-like fashion, placed implicit confidence in defendants. They told them so, and as a result of that confidence, and the continuing fraudulent purpose and design of defendants, were thoroughly duped. This was a suit in equity. The trial court determined justice and fairness would not permit defendants to prevail in such an undertaking. We are not inclined to disturb the result. The judgment is affirmed.