No. 40,932

ROBERT J. SHIELDS and RICHARD L. SHIELDS, a Partnership, d/b/a Shields Oil Producers, *Appellants,* v. FRED MEYER, JR., *Appellee.*

(325 P. 2d 29)

112

*Eric E. Smith,* of Russell, argued the cause, and *Robert J. Dole,* of Russell, and *W. W. Urban,* of Lincoln, were with him on the briefs for the appellants.

*Harold H. Chase,* of Salina, argued the cause, and *Robert L. Gowdy,* of Salina, and *Theodore M. Metz,* of Lincoln, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: Plaintiffs, as copartners, filed an action for recovery of certain money; defendant answered and cross-petitioned for return of the purchase price he had paid for a one-eighth interest in an oil and gas lease. The verdict of the jury and the judgment were in favor of defendant on his cross-petition. Plaintiffs appeal.

The petition and answer are not in controversy and we will, therefore, proceed to the salient portions of the cross-petition. On July 2, 1955, plaintiffs offered to sell to defendant a one-eighth interest in a certain oil and gas lease owned by them and defendant gave them his check in the sum of $1,500 therefor. On July 15, 1955, plaintiffs tendered defendant an assignment of the one-eighth interest subject, however, to a one-sixteenth of seven-eighths over-riding royalty. On July 16, 1955, defendant notified plaintiffs that he would not accept the assignment and demanded delivery of one containing no overriding royalty, as had been agreed at the time of purchase. On July 23, 1955, plaintiffs refused to deliver such a lease, and defendant on August 29, 1955, demanded return of the $1,500 purchase money. Plaintiffs at that time refused and they have since then neglected and refused to return the money. By his cross-petition defendant sought to recover back the $1,500 together with the legal rate of interest from July 2, 1955.

Plaintiffs' general demurrer to this cross-petition was overruled and that ruling is assigned as the trial court's first error. In their argument on this phase of the appeal, the parties refer to parts of the evidence but at this stage of the proceeding in testing the propriety of the trial court's order on a general demurrer challenging its sufficiency, we consider only the pleading attacked (*Wendler v. City of Great Bend,* 181 Kan. 753, 755, 316 P. 2d 265) and we will take as true the well-pleaded allegations of this cross-petition and

give all favorable inferences that may be drawn therefrom. (*Merchant v. Foreman*, 182 Kan. 550, 322 P. 2d 740.) With these preliminary matters relating to the cross-petition disposed of, we turn next to the more vital question involving both the cross-petition, and the evidence in support thereof, since the trial court's order overruling a demurrer to this evidence is the next error complained of by plaintiffs. We apply the same rule in considering a trial court's order determining the sufficiency of evidence, when attacked by demurrer, as we do when considering an order that determines a demurrer to a petition. If there is good substantial evidence to support the contentions of the party adducing it, a demurrer thereto should be overruled.

The evidence was uncontradicted that two men, West and Maybrier, approached defendant on June 29, 1955, with an offer to sell him an interest in the seven-eighths working interest of the Nejdl oil and gas lease in Ellsworth county. These negotiations reached a climax on July 2, 1955, in the offices of Robert and Richard Shields, plaintiffs herein, who are copartners in Shields Oil Producers engaged in drilling for and production of crude oil. Robert is also president of the Shields Drilling Company, a Kansas corporation, which owns a rotary rig and does the actual drilling of wells. While in the office on July 2, 1955, defendant gave plaintiffs his check for $1,500 as follows:

"DEFENDANT'S EXHIBIT No. 1

| Salina, Kansas. | July 2, 1955 | No. |
|---|---|---|
| | The Planters State Bank | 83-64 |
| The Planters State Bank | | 1011 |

PAY TO THE ORDER OF
Shields Drilling Company, Inc. $1,500.00

One thousand five hundred and no/100 - - - - - - - - - DOLLARS

Dft. Ex. 1 /s/ Fred Meyer, Jr."
E. H.

The check was endorsed by the Shields Drilling Company, Incorporated, and in receipt therefor defendant received the following letter:

"DEFENDANT'S EXHIBIT No. 5

R. J. SHIELDS, President
R. L. SHIELDS, Vice President

SHIELDS DRILLING COMPANY, INC.

Russell, Kansas
July 2, 1955

Mr. Fred Meyer, Jr. Re: Proposed Nedjl Test
Sylvan Grove Shields-Maybrier Farm-Out
Kansas NE/4 of Sec. 31-15-10
 Ellsworth County, Kansas

Dear Mr. Meyer:

This will acknowledge receipt of your deposit of $1500.00 covering your ⅛ interest in the drilling of the above captioned test well.

The assignments and other supporting evidence will follow in the next few days.

Sincerely,

SHIELDS DRILLING COMPANY, Inc.
/s/ R. J. Shields
R. J. Shields, President"

RJS:pl

Later defendant received an oil and gas lease interest in the usual form which assigned an undivided one-eighth interest in the Nejdl lease subject to the following clause:

"This assignment is subject to assignee's proportionate share of one-sixteenth (1/16th) of seven-eighths (⅞th) overriding royalty, previously conveyed."

This assignment was executed and notarized on July 5, 1955; according to the postmark it was mailed on July 14, 1955, and was received by defendant on July 16, 1955, about 9:30 a. m. at the Sylvan Grove postoffice. At 10:00 a. m. on the same day, according to former arrangement, West and Maybrier came to defendant's farm to pick up the assignment in order that they could record it. Defendant told them he had received the assignment but he had not received what he bought. He had not bought the override. He had not and he would not accept it. If they would correct the assignment and give him a full eighth without any override, everything would be "fine and dandy." They asked if he wanted his money back and he answered he did not.

On July 16, 1955, defendant wrote Robert Shields the following letter:

"Dear Mr. Shields:

"This is to notify you that I received an assignment of oil and gas lease which your salesmen Harry West and Maybrier sold to me on the First day of

July 1955, an full One Eight of the Seven Eights working interests clean without any over riding royalty whatsoever.

"Now you sent to me an assignment of oil and gas lease with an 1/16 One sixteenth over riding royalty attached to it, that is not what I purchased from your salesmen. Harry West and Mr. Maybrier.

"Listen this deal looks to me as though it has been misrepresented and false pretensed to me by said salesmen. I will not accept said assignment as is.

"I request that you issue to me an assignment that states as ⅛ one-eight of the ⅞ seven-eights working interest, without any overriding royalty whatsoever attached to it.

"Mr. Shields will you be kind enough to help iron out this matter. I do not want to make trouble, I demand my full right title and interest in this assignment. CLEAN—NO—OVERRIDING—ROYALTY ATTACHED—TO—IT.

"I shall never File this assignment or put it of record until I receive one that has no overriding clause attached to it.

"I will not spend any money for equipment on said well, until this matter is straightened up to my entire satisfaction.

"I am granting your Salesmen Five Days to clean this matter up, better get busy at once, if they fail to do so, then they will force me to take action in an legal way. I talked the matter over with one of my legal advisors he told me to write to you and explain the matter to you before taking action.

"Mr. Shields I believe we can iron this matter out to my satisfaction.

"Kindly let me hear from you at once. I thank you.

Yours very sincerely,<br>Fred Meyer, Jr."

Shields replied on July 23, 1955, but we do not deem it necessary to reiterate the contents of his letter.

On August 5, 1955, because of water, the well was abandoned.

The oral testimony was conflicting on the interest that defendant received in return for his $1,500 and it would serve no useful purpose to detail it.

Plaintiffs' principal contention is that the cross-petition and evidence failed to plead and prove that defendant was entitled to the return of his $1,500 because he had not complied with a primary requirement of equity that when a litigant seeks to rescind a contract, he must place, or offer to place his adversary in *status quo*, as stated in the landmark case of *Beneke v. Bankers Mortgage Co.*, 119 Kan. 105, 237 Pac. 932. In that case plaintiff's petition alleged he was induced by fraud to purchase 100 shares of stock but only fifty shares were delivered to him. In payment he transferred a note and mortgage in the sum of $10,200. Seller paid plaintiff $200.00 accrued interest. Return of the note and mortgage was sought by plaintiff but no mention was made of the return of the

$200.00 interest paid him by the seller. The rule is that in an action for rescission on the ground of fraud the plaintiff must wash his own hands of money derived from a transaction or, as generally stated, a plaintiff seeking rescission must place, or offer to place, the defendant in *status quo* and a petition which does not plead restoration, or offer of restoration, of what plaintiff received, is not only demurrable but is not good as against an objection to the introduction of evidence. (p. 110.) Failure of the evidence to establish an offer to place the adversary in *status quo* makes that evidence likewise demurrable. (*Webster v. Toland*, 148 Kan. 36, 41, 79 P. 2d 884.) For other decisions so holding as to restoration of *status quo*, see *Baron v. Lyman*, 136 Kan. 842, 849, 18 P. 2d 137; *Brandtjen & Kluge, Inc., v. Lucas*, 153 Kan. 138, 141, 109 P. 2d 197.

On the other hand, as to exceptions to the above rule, defendant refers us to *Fairbanks v. Walker*, 76 Kan. 903, 92 Pac. 1129, where an oil storage tank furnished a buyer was of an inferior kind and quality to the one agreed upon and the court there said the general rule in regard to rescission does not always require an absolute and literal restoration of the parties to their former condition but it will suffice if such restoration be made as is reasonably possible, and such as the merits of the case demand. Defendant then cites *Niquette v. Green*, 81 Kan. 569, 106 Pac. 270, which was an action against an executor for specific performance of a contract to sell and convey land and it was held that tender to a vendor is not a condition precedent to the maintenance of the action when the vendor has put himself in default by repudiating the obligation of the contract of sale. On pages 581 and 582 of the opinion there appears a good discussion of the maxim that "Equity does not insist on purposeless conduct and disregards mere formalities." Finally, defendant relies on *Wells v. Higgins*, 144 Kan. 155, 58 P. 2d 1097, an action to cancel and set aside a deed, quiet title, and to cancel and set aside a bill of sale of personalty—all parts of the same contract. This court there cited *Ely v. Joslin*, 111 Kan. 638, 643, 208 Pac. 628, and quoted therefrom as follows:

"'Under the circumstances a tender of the money then would have been useless, as the defendant, by words and conduct, had indicated that he was unwilling to perform. It has been decided that "where one party by his act renders a tender useless and foolish, the other party is not required to make the tender." '" (p. 165.)

In the Wells case the following statement from 3 Black on Rescission and Cancellation was also quoted:

" 'Moreover, any insufficiency in a tender of rescission and return will be waived by an absolute refusal of the other party to entertain the proposal at all.' " (p. 165.)

In view of the allegation in defendant's cross-petition that after receiving the one-eighth assignment subject to a one-sixteenth overriding royalty, he notified plaintiff the very next day of his refusal to accept the assignment and demanded delivery of an assignment containing no override, which plaintiffs totally disregarded, and the oral testimony brought out in defendant's evidence, a clear cut situation was shown that absolute and literal restoration of the parties to *status quo* would have been purposeless, useless and foolish. Applying the legal principles announced, we must, therefore, concur with the trial court's orders overruling the demurrers to the cross-petition and to the evidence of defendant. It follows that other questions based on this proposition must be determined in the same way.

Plaintiffs additionally contend that a counterclaim must satisfy the requirements of a petition as though it were filed in an original action. (*Allen v. Douglass,* 29 Kan. 412.) We believe the counterclaim here concerned does satisfy that requirement and we have so treated it in our discussion.

Another contention of plaintiffs that defendant attempted to rely on inconsistent remedies is well discussed in *Taylor v. Robertson Petroleum Co.,* 156 Kan. 822, 826, 137 P. 2d 150 and in *Deal Lumber Co. v. Vieux,* 179 Kan. 760, 765, 298 P. 2d 339. In addition they attempt to make use of the prayer of the cross-petition to qualify this contention. We have said that a prayer is not of vital importance if the petition states a cause of action because a prayer is merely the pleader's idea of the relief to which he is entitled. (*Rodenberg v. Rodenberg,* 149 Kan. 142, 145, 86 P. 2d 580.)

An examination of the requested instructions to the jury and those given by the trial court reveals no error. Judgment was properly entered in favor of defendant based on the verdict of the jury.

Affirmed.